Argued September 25, affirmed December 4, 1978

# STATE OF OREGON, *Respondent,*
## *v.*
# CLYDE DEWAYNE ELAM, JR., *Appellant.*
## (No. B45-113, CA 11103)

587 P2d 491

Michael D. Linick, Eugene, argued the cause for appellant. With him on the brief was Public Defender Services of Lane County, Inc., Eugene.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Defendant was charged by complaint with two counts of menacing. ORS 163.190. The court denied his motion to sever the charges for trial. A jury found him guilty on one count, but not guilty on the other. He appeals, arguing that his motion to sever should have been granted, that the court erred in sustaining the state's objection to a question asked a juror on *voir dire* and that two requested instructions should have been given.

On the day before the alleged criminal incident, defendant, the woman with whom he lived and her 10-year-old daughter went on a picnic. Defendant's clothing accidentally caught fire, and the woman helped put it out. Although defendant was not seriously injured, the woman was very upset. Early the next day, she and defendant began to argue about matters unrelated to the incident at the picnic. The argument continued through the day, becoming more and more heated. Finally, she became so incensed that she uttered an inflammatory exclamation: "I should have let you burn * * *." His temper afire, defendant scorchingly retorted, "I'm going to watch you burn."

He went to the bathroom and returned with a bottle of isopropyl ("rubbing") alcohol. (The Director of the Oregon State Police Laboratory testified that that kind of alcohol "burns quite nicely.") He opened the bottle and threw alcohol toward the woman, who was standing next to a bed. Some of the alcohol got on her clothing and some on the clothing of her daughter, who was lying on the bed behind her. Defendant then lit a match and said something to the woman about burning. She screamed, pulled off her sweater, picked up the alcohol bottle and threw it out of the house. A neighbor called the police.

On January 19, 1978, a two-count complaint was filed. The first count alleged that defendant had attempted to place the woman "in fear of imminent serious physical injury." The second count, specifically

pleaded as part of the same act and transaction, alleged that he had attempted to place the daughter "in fear of imminent serious physical injury." A motion for dismissal of the charges based on a civil compromise was denied April 19. On April 27, defendant filed a motion to sever the counts for trial.

The motion was argued before Judge Liepe on May 8, four days before the trial was to begin. Defense counsel argued that if the two counts were tried together, the jury might return a guilty verdict on count I as a "compromise," because a child was involved in the incident. Counsel also asserted that if the charges were separately tried, he would be able to keep out prejudicial evidence of the "impressions of the child" in the trial on the count involving her mother. Finally, he argued:

> "At this present time there is a strong likelihood that I will not be calling Mr. Elam to the stand in regards to count II of the complaint and in count I he will be taking the stand, or at least that is our present intent, that he would be taking the stand in count I. But as I stand here before the court at this present time, subject to change of trial strategy just prior to trial or even during the course of trial, it is our intent—strong likelihood—that we will not be calling Mr. Elam to the stand with respect to count II."

The state opposed the motion, arguing that severance would result only in a waste of time and judicial resources. Because the two charges were inextricably related with respect to time, place and circumstance, the state argued, the evidence adduced at each of the individual trials would be the same as that adduced at a joint trial. Therefore, defendant would not be prejudiced by trying the charges together.

Judge Liepe denied the motion. He concluded that the problem of a "compromise" verdict could be adequately avoided by a jury instruction. He also concluded that the reasons given in support of the motion were not stated with sufficient definiteness and that if severance were granted the identical case would have

to be tried twice. In response to the argument that defendant would probably not take the stand on count II, Judge Liepe stated:

"On the basis on which it has been put at this time, namely that, 'Well, we may do that or we may not,' that would not be enough for the court to order a separate trial in a case where it would appear, at least from what I've heard so far, that certainly it's all one transaction or at least all alleged to be one transaction. And that, both from the point of view of the defense as well as from the point of view of the state, that it would be the same set of witnesses in each case attested to—testifying to what allegedly occurred.

"This is not a situation where one act occurred at one time and another at another time, but it is * * * the same conduct affecting two victims * * *."

On the morning trial was to begin, defense counsel renewed the motion to sever before Judge Merten, who was presiding over the trial. In addition to the arguments presented to Judge Liepe, defendant argued that he wished to submit on each of the charges different jury instructions concerning the law of menacing. He argued that the law regarding the elements of that offense were unsettled and that he had a right to separate juries instructed differently on the law of menacing. He also claimed that in a separate trial on count I he would be able to keep out evidence that some of the alcohol got on the daughter's clothes. In addition, he was somewhat more definite concerning defendant's decision not to testify in regard to count II.

■ Judge Merten denied the motion, stating that it was simply a renewal of a previously denied motion supported by a new theory. He relied on ORS 16.740:

"If a motion made to a judge of the court in which the action, suit or proceeding is pending is refused in whole or in part, or is granted conditionally, no subsequent motion for the same order shall be made to any other judge. A violation of this section is punishable as a contempt, and an order made contrary thereto may be revoked by the judge who made it, or vacated by the

court or judge thereof in which the action, suit or proceeding is pending."

Judge Merten noted:

> "[I]f we don't have motions made and decided once and for all, we could end up having motions received any time new theories are thought up * * *."

The two charges were tried together to a jury. Defendant was found not guilty of menacing the daughter, but guilty of menacing her mother.

Defendant argues that he should have been granted two separate trials. He does not specify whether it is the ruling of Judge Liepe, the ruling of Judge Merten or both that he challenges, but we have to consider both. Defendant argues that a statement by Judge Liepe after he ruled on the initial motion precluded Judge Merten from ruling on the ground he did. After Judge Liepe announced his denial of the motion, defense counsel said:

> "Your honor, it's my understanding of what the court is saying that if I make a final determination whether he will be taking the stand as to the second count or not, that I can renew my motion without being in contempt of court."

The judge replied:

> "Yes, you can renew the motion without being in contempt of court; but I'm not saying how [it/I][1] will rule * * *."

We do not interpret that comment as defendant does. While it would have been clearly unfair to hold defense counsel in contempt of court when he attempted to renew the motion, it was not improper for Judge Merten to rule as he did in reliance on the sound policy underlying ORS 16.740.

The question then is whether Judge Liepe's ruling was correct. It should be noted that defendant does not

---

[1] Whether the court said "it" or "I" cannot clearly be ascertained from the taped record. The state argues that Judge Liepe said "I" and therefore that the motion could properly have been renewed only before him.

argue that the two charges were improperly joined in the complaint. It is conceded that both counts arose out of the same act or transaction. *See State v. Fitzgerald,* 267 Or 266, 516 P2d 1280 (1973).[2] He argues that his motion to sever should have been granted to protect him from the prejudicial effects of a joint trial. *See State v. Boyd,* 271 Or 558, 533 P2d 795 (1975);[3] *State v. Eusted,* 12 Or App 351, 507 P2d 60 (1973).

It has been stated that the defendant's choice of separate trials on joinable offenses should "in the vast majority of cases * * * be accepted." *State v. Boyd, supra,* 271 Or at 569. Nevertheless, where the state does oppose a motion to sever on valid grounds, the court must determine if, and to what extent, defendant will be prejudiced by a joint trial. *State v. Shields, supra,* n 3.

We agree with Judge Liepe that the two charges were so closely related that no relevant evidence was admissible in the joint trial that would not have been properly admitted in each of the separate trials. *See State v. Remington,* 15 Or App 170, 515 P2d 189 (1973), *rev den* (1974). Clearly, in a separate trial on the count involving the mother the jury would have become just as aware of the child's involvement, because the child would have testified. The possibility of a "compromise" verdict—a possibility which we agree was properly

[2] The defendant also waived any double jeopardy objection to separate trials. *See State v. Boyd,* 271 Or 588, 533 P2d 795 (1975).

[3] In *State v. Shields,* 280 Or 471, 476 n 5, 571 P2d 892 (1977), the court quoted as follows from *State v. Boyd,* 271 Or 558, 568-69, 533 P2d 795 (1975):

"In the rare case in which the prosecutor would have an interest in opposing the defendant's choice of joinder or severance, the trial and appellate courts will determine whether the charges are unitary by reference to their factual interrelation in terms of the *Fitzgerald* [*State v. Fitzgerald,* 267 Or 266, 516 P2d 1280 (1973)] test. In making this determination, the emphasis of necessity will be on the accused's rights to be free from being required to answer more than once for the same act or transaction and to face a trier of fact unprejudiced by damning evidence of extraneous transactions. Because these two rights may appear to conflict before the evidence is actually adduced at trial, the accused's choice should normally be accepted unless clearly improper."

[ 371 ]

avoided by an instruction to the jury[4]—would not therefore likely have been lessened by severance.

■ Defendant's final argument was that a joint trial infringed upon his right to testify or to remain silent in each case. Or Const Art I, §§ 11, 12. That has been recognized as a valid reason for separate trials under some circumstances. *State v. Eusted, supra; see also State v. Fitzgerald, supra.* In this case defense counsel represented that if severance were granted, defendant would testify in the trial on count I, but would most likely not testify in regard to count II because he did not wish to be subjected to cross-examination in that case. In the joint trial defendant did testify and was subjected to cross-examination. Nevertheless, the jury found him not guilty on count II. Assuming for the sake of argument only that under the circumstances the right to testify or remain silent was an adequate ground for severance, we cannot see that defendant was prejudiced. Moreover, it should be noted, the evidence against defendant on count I was overwhelming. *See State v. Fitzgerald, supra.*

■ Defendant next argues that the trial court erred in sustaining the state's objection to a question posed to a juror on *voir dire* concerning the juror's ability in reaching a verdict on count I to disregard the fact that a child was the alleged victim in count II.[5] He relies on *State v. Ziebert,* 34 Or App 497, 579 P2d 275 (1978). Although the trial court probably erred in sustaining the objection, the evidence against defendant on count

---

[4] At the outset of *voir dire* the court instructed the jury panel that two separate charges were involved and that the jury should be careful to reach independent verdicts based on the evidence presented on each charge.

[5] When the question was posed to the first juror, the state objected on the grounds that the matter would be covered by the court's instructions and that a hypothetical question based on what the facts may or may not show was inappropriate. The objection was sustained. Defense counsel did not attempt to ask jurors two through five any similar question. To jurors six and seven he posed essentially the same question to which the objection had been sustained. No objection was made. During the *voir dire* of the eighth juror the judge asked substantially the same question. The defendant exercised only one peremptory challenge, and that was directed to the seventh member of the panel.

I was so overwhelming that the error, if any, surely did not affect the jury's verdict. Or Const, Amended Art VII, § 3: *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973).

■ Defendant also assigns as error the refusal of the trial court to give two requested instructions. He argues that it was error to allow two police officers to testify concerning the mental or emotional state of the alleged victims during the incident and that the court should have corrected that error by giving the following requested instruction:

> "You are not to consider in your deliberations and findings in this case that the alleged victim in the case became or was fearful of receiving imminent serious physical injury at the hands of the defendant for such is not relevant to the charge in the present case. Thus, if a witness testified that he or she was scared or fearful, you must still find that the defendant intentionally attempted to place such person in fear of imminent serious physical injury."

Whether or not the evidence was relevant, the trial court noted that the state made no attempt to emphasize it. In rejecting the instruction the court noted:

> "I'm going to be telling [the jury] what the charge entails and what the material elements are. I really see no need to go through and tell them what it isn't. I can really be here a long time if I tell them everything menacing is not * * *."

The court did instruct the jury properly on the elements of menacing. We find no abuse of discretion in refusing to give the requested instruction.

■ Finally, defendant argues that the court should have instructed the jury:

> "If you find beyond a reasonable doubt the material elements upon which you have already been instructed, still, before you may return a verdict of guilty, you must find beyond a reasonable doubt that the defendant was within a distance of the alleged victim or victims that he could carry out the threat, if any, to inflict serious physical injury."

[ 373 ]

The state argues that the instruction misstates the requirements of ORS 163.190. There is a simpler answer. In light of the evidence that defendant was at most two or three feet from the woman at the time he lit the match, the trial court did not abuse its discretion in refusing the instruction.

Affirmed.