Argued and submitted October 17, 1979,
affirmed March 10, 1980

STATE OF OREGON,
*Respondent,*

*v.*

MAURICE ANDREW PARRISH,
*Appellant.*

(Nos. 39950, 39951, 39953,
CA 13075, 13076, 13077)
(consolidated cases)

607 P2d 778

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

TANZER, P. J.

**TANZER, P. J.**

Defendant was charged in each of six two-count indictments with one count of sale of an unregistered security and one count of fraudulent sale of securities, in violation of ORS 59.055 and 59.135, respectively. On the state's motion and over defendant's objection, three of the indictments were consolidated for trial. Defendant was convicted of the six offenses charged in the three indictments and sentenced only on the fraudulent sale counts. Defendant appeals, assigning as error the trial court's order consolidating the three indictments for trial and the admission of testimony of similar crimes committed by defendant against other persons.

The three consolidated indictments allege a sale to Roy and Colleen Schiewe (Schiewes), another to their son Mark and a third to their son Rodney. But for different victims, the latter two indictments are identical. The allegations in the first indictment differ from the other two only in the names of the victims, the dates of the offenses and the amount of money for which the securities were sold. They all allege the same false statements.

The charges in all three indictments stem from a transaction in May, 1976, in which the Schiewes were induced by defendant to invest money through him in a nonexistent corporation which, according to defendant, owned an interest in logs that were rapidly appreciating in value. Defendant also falsely represented that a prominent lumberman was associated with the corporation and that the Schiewes stood to realize a substantial profit on their investment. The Schiewes paid the money to defendant and received from him a promissory note.

Later, at Roy Schiewe's request and with him as the intermediary, defendant entered into transactions with both Mark and Rodney Schiewe which were similar to the initial one except for lesser amounts of

[101]

money. Neither Mark nor Rodney talked directly with defendant about the investment, relying instead on the defendant's representations as related to them by their parents.

## CONSOLIDATION

The state moved under ORS 132.560(2)[1] to consolidate all six indictments for trial, following the procedure first suggested in *State v. Bishop,* 16 Or App 310, 314, 518 P2d 177 (1974), and later elaborated in *State v. Boyd,* 271 Or 558, 533 P2d 795 (1975).[2] The state argued in the alternative that at least the three indictments involving the Schiewe family be consolidated. Defendant opposed the motion, insisting on separate trials on each of the six indictments. The trial court

---

[1] ORS 132.560(2) provides:

"The indictment must charge but one crime, and in one form only, except that:

"* * * * *

"(2) When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

[2]

"* * * [W]henever the prosecutor becomes aware of multiple charges facing a single defendant, he must make an initial determination of whether the charges are unitary, that is whether they grew out of a single act or transaction. Unless the prosecutor is absolutely certain that presenting the facts underlying each charge will not necessitate reference to the facts underlying another, the prosecutor should move for joinder of the charges for trial. The defendant may oppose, acquiesce in, or join in this motion or, if the charges were initially brought together, move for severance. The defendant will thus be forced to make a choice as to joinder or severance which, in the vast majority of cases, should be accepted. Any objections the defendant might make to the prosecutor's choice would thereafter be waived. In the rare case in which the prosecutor would have an interest in opposing the defendant's choice of joinder or severance, the trial and appellate courts will determine whether the charges are unitary by reference to their factual interrelation in terms of the *Fitzgerald* test. [*See State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973).] * * * [T]he accused's choice should normally be accepted unless clearly improper." *State v. Boyd,* 271 Or at 568-69.

ordered the three Schiewe indictments consolidated for trial, and defendant assigns that order as error.

The Supreme Court held in *State v. Boyd* that the test for determining whether separate charges are properly consolidated for trial as "[growing] out of a single act or transaction" is whether the charges are "unitary." *See* note 2, above.

> "* * * [T]he trial and appellate courts will determine whether the charges are unitary by reference to their factual interrelation in terms of the *Fitzgerald* test." *Id.*

The *Fitzgerald* test is that

> "* * * two charges arise out of the same act or transaction if they are so closely linked in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge. * * *"

*State v. Fitzgerald,* 267 Or 266, 273, 516 P2d 1280 (1973).

There is a sufficient factual interrelation among the charges in the three indictments to support their consolidation for trial. Because the sales to Mark and Rodney were based upon defendant's representations to and through their parents, it is obvious, to paraphrase *Fitzgerald,* that a complete account of the offenses against Mark and Rodney would necessarily include details of the same offenses against their parents. Conversely, the sale to the Schiewes is a part of, *i.e.,* among the details of, the sale to the sons. Therefore, an account of these offenses would necessarily relate some of the details of the offenses against their sons. And last, considering that one cannot present the details of the offenses against either Mark or Rodney without relating most, if not all, of the initial transaction between their parents and the defendant, an account of the offenses against either Mark or Rodney would necessarily entail presenting some of the details of the offenses against the other.

[103]

Defendant argues that at least the offenses against the Schiewes should have been tried separately from those against Mark and Rodney, because the transactions were about five weeks apart. The amount of time that passes between one offense and the next is not necessarily determinative, particularly in a fraud case. Rather, the decisive question under *State v. Boyd,* 271 Or at 568, is "whether the charges are unitary." Although concurrence of time, place and circumstance are indicia of such unity, consolidation ultimately depends on whether the charges are so factually interrelated that "a complete account of one charge cannot be related without relating details of the other charge[s]." *State v. Fitzgerald,* 267 Or at 273. As stated earlier, the factual interrelation of the three indictments is evident here, and their consolidation for trial was permissible.

### EVIDENCE OF OTHER SALES

Defendant next contends the trial court erred by admitting the testimony of John and Charleen Cutting, named as victims in the remaining three indictments, to the effect that defendant had defrauded them in the same manner and upon the same misrepresentations as were made to the Schiewes. Evidence of similar fraudulent transactions is relevant to show fraudulent intent. *State v. Ankeny,* 185 Or 549, 204 P2d 133 (1949). As the Supreme Court noted in *Ankeny,* quoting with approval from authority:

> " '* * * When the commission of the act charged in the indictment is practically admitted by the prisoner, who seeks to avoid criminal responsibility therefor by relying upon the lack of intent or want of guilty knowledge, evidence of the commission by him of similar independent offenses before or after that upon which he is being tried, and having no apparent connection therewith, is admissible to prove such intent or knowledge, which has become the material issue for trial.' " 185 Or at 559-560.

Defendant objected to its admission because it would be prejudicial in light of his offer to stipulate

[104]

that he had made the statements to the Schiewes which the indictments alleged him to have made. *Cf. State v. McKendall,* 36 Or App 187, 197-98, 584 P2d 316 (1978); *State v. Zimmerlee,* 261 Or 49, 54, 492 P2d 795 (1972). The stipulation was not sufficient to bar the evidence as a matter of law. Defendant did not stipulate that he made the statements to the Cuttings; nor did he stipulate that the statements to the Schiewes were knowingly false. We do not mean to imply that the Cuttings' testimony was so inflammatory that a proper stipulation would have barred the testimony. We need not reach that issue because the stipulation was insufficient to obviate the other side's purpose in offering the live evidence.

Affirmed.