Argued and submitted January 14, affirmed in part,
reversed in part and remanded for resentencing May 26,
reconsideration denied August 20,
petition for review allowed October 27, 1981 (291 Or 893

STATE OF OREGON,
*Respondent,*

*v.*

KENNETH RICHARD LINTHWAITE,
*Appellant.*

(Nos. 80-281-C - CA 18242,
80-478-C - CA 18243,
80-479-C - CA 18244,
80-480-C - CA 18245,
80-481-C - CA 18246,
80-482-C - CA 18247,
80-56-F & 80-3973-T)

628 P2d 1250

512

Dennis D. James, Grants Pass, argued the cause for appellant. With him on the brief was Swint & James, Grants Pass.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, and William F. Gary, Deputy Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

Richardson, P.J., dissenting in part.

## VAN HOOMISSEN, J.

In these eight consolidated cases, defendant appeals his convictions on five charges of Recklessly Endangering (ORS 163.195), four charges of Attempting to Use a Dangerous Weapon (ORS 166.220), four charges of Menacing (ORS 163.190), two charges of Criminal Mischief in the Second Degree (ORS 164.354) and one charge of Reckless Driving (ORS 487.550).

On appeal, defendant contends the trial court erred: (1) in denying his motion to sever seven misdemeanor charges from two felony charges and for separate trials on the felony charges; (2) in overruling his demurrer to an indictment describing the alleged victim only as "full name unknown"; (3) in sentencing him without allowing the merger of all four counts of Attempting to Use a Dangerous Weapon into one conviction and sentence, and in refusing to merge each conviction and sentence for Menacing with the corresponding conviction for Recklessly Endangering the same victim; and (4) in permitting him to be convicted of and sentenced for two offenses with which he was not charged. For the reasons stated hereafter, we find that these cases should be affirmed in part, reversed in part and remanded for resentencing.

### FACTS

On February 26, 1980, while driving in an erratic manner in a public park, defendant nearly collided with another car, resulting in a confrontation between himself and several members of a single family. Defendant produced a knife and began brandishing it at four members of the family and at an unrelated bystander. He kicked and damaged the car with which he had nearly collided and smashed a camera belonging to one member of the family. The entire episode lasted about twenty minutes.

### ORIGINAL CHARGES

On February 27, 1980, defendant was charged in an eight-count district court information as follows: Count I, Attempted Assault in the First Degree (Anderson), Count II, Attempted Assault in the First Degree (Steele), Count III, Menacing (Vigil), Count IV, Criminal Mischief in the Second Degree (camera), Count V, Attempted Criminal Mischief in the Second Degree (automobile), Count VI,

Harassment (Garland), Count VII, Carrying a Concealed Weapon (knife) and Count VIII, Possession of a Controlled Substance (demerol). He also was charged in a separate complaint with Reckless Driving.[1]

On February 28, 1980, the grand jury returned a two-count indictment charging defendant with Attempted Assault in the First Degree (Anderson/Steele). This indictment realleged the facts contained in Counts I and II of the district court information.[2]

Thereafter, the prosecutor moved to consolidate the two felony charges contained in the indictment with the remaining six misdemeanor charges contained in the district court information and the Reckless Driving charge.[3] Defendant moved to sever the misdemeanors from the felonies. He also requested separate trials on the felony charges. The state's motion to consolidate and defendant's motion to sever and for separate trials resulted in the entry of an order severing the charges of Harassment (Count VI) and Possession of a Controlled Substance (Count VIII) and consolidating the remaining five misdemeanors and two felonies for trial.[4]

### ADDITIONAL CHARGES

Defendant moved for reconsideration. On April 4, 1980, before that motion was heard by the court, the grand jury returned five new indictments charging him with two

---

[1] One can only speculate what considerations passed through the mind of the prosecutor as he exercised his discretion in charging. During argument in this court, the state, while virtually conceding the district attorney had prosecuted with a vengeance, nevertheless explained multiple charges were justified because the prosecutor wanted to insure that various theories of the case were submitted for the jury's consideration. *See American Bar Association Standards For Criminal Justice: Standards Relating To The Prosecution Function, Standard 3.9, Discretion in the charging decision,* and subsequent commentary; *see also, State v. Clipston,* 3 Or App 313, 330, 473 P2d 682 (1970).

[2] Counts I and II of the district court information were dismissed on the return of this indictment.

[3] ORS 132.560(2); *State v. Shields,* 280 Or 471, 475, 571 P2d 892 (1977); *State v. Boyd,* 271 Or 558, 568, 533 P2d 795 (1975).

[4] The charges for Harassment (Count VI), Carrying a Concealed Weapon (Count VII) and Possession of a Controlled Substance (Count VIII) were dismissed on motion of the state after trial.

counts of Attempted Assault in the First Degree (Marsing/-full name unknown); four counts of Attempting to Use a Dangerous Weapon (Anderson/Steele/Marsing/ full name unknown); two counts of Menacing (Marsing/full name unknown) and Criminal Mischief in the Second Degree (automobile). All of the nine new charges were based upon the same episode which had formed the basis of the original district court information and the first indictment.[5]

On April 7, 1980, the court heard arguments on defendant's motion for reconsideration. During this hearing, the prosecutor made an oral motion to consolidate the nine new charges contained in the indictments filed April 4, 1980, with the charges previously consolidated by the circuit court. The defendant again objected to consolidation. The court entered the following order:

"* * * [I]t appearing to this Court that there exists confusion regarding what cases involving Kenneth Richard Linthwaite are to be tried on April 23, 1980; and

"IT IS HEREBY ORDERED that the following cases involving Defendant will be tried on that date:

"(A) Counts I and II of Case No. 80-281-C

"(B) Cases number 80-478-C through and including case No. 80-482-C, and all Counts of these cases.

"(C) Counts III, IV and VII of case No. 80-56-F, and Case No. 80-3973-T;

"IT IS FURTHER ORDERED that Counts VI and VIII of case No. 80-56-F are not to be heard on April 23, 1980, and the State may try those charges and all other drug charges arising out of the incident of February 26, 1980, involving Defendant in Riverside Park at a later date without Defendant having available the defense of double jeopardy."

Next defendant filed a demurrer against a three count indictment charging Attempted Assault in the First Degree, Attempting to Use a Dangerous Weapon and Menacing.[6] The victim in each count was identified only as

---

[5] The charge for Attempted Criminal Mischief in the Second Degree (Count V) was dismissed on the return of the indictment in case No. 80-482-C charging Criminal Mischief in the Second Degree.

[6] ORS 135.630 provides:

"full name unknown." The demurrer was overruled. The fourteen consolidated cases[7] were thereupon tried to a jury, which convicted defendant of sixteen offenses.[8]

## POST TRIAL PROCEEDINGS

Prior to sentencing, defendant filed a "Notice Of Merger" as follows:

"Comes now the Defendant * * * and gives notice to the Court of his intention to raise the issue of merger at the time of sentencing. The issue of merger shall be raised as the convictions for five convictions of recklessly endangering ORS 163.195 and four convictions of menacing ORS 163.190 and the four convictions for attempting to use a dangerous weapon ORS 166.220(1)."

Dismissing every defense theory concerning merger of convictions and sentences and the impropriety of cumulative punishment, the court suspended imposition of sentence

---

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"* * * * *

"(6) That the accusatory instrument is not definite and certain."

[7] Defendant was tried on four counts of Attempted Assault in the First Degree (Anderson/Steele/Marsing/full name unknown), four counts of Attempting to Use a Dangerous Weapon (Anderson/ Steele/Marsing/full name unknown), three counts of Menacing (Marsing/full name unknown/Vigil), two counts of Criminal Mischief in the Second Degree and Reckless Driving.

[8] Defendant was acquitted on the most serious charges, four counts of Attempted Assault in the First Degree (Anderson/ Steele/Marsing/full name unknown), but he was convicted of four counts of the lesser included offense of Recklessly Endangering. He was also convicted on four counts of Attempted Use of a Dangerous Weapon (Anderson/ Steele/Marsing/full name unknown), a fifth count of Recklessly Endangering (Vigil), four counts of Menacing (Anderson-/Steele/Marsing/full name unknown), two counts of Criminal Mischief in the Second Degree (automobile/camera) and Reckless Driving.

This anomaly occurred because the jury not only convicted the defendant of Attempting to Use a Dangerous Weapon, the offense charged in case No. 80-481-C, but it also convicted him of Menacing, a crime for which he was not charged. The state concedes that even if Menacing is not a lesser included offense, a conviction for Menacing would merge with a conviction for Attempting to Use a Dangerous Weapon under these circumstances.

The jury made the same mistake in case No. 80-478-C.

The disparity between the crimes charged and convictions returned was not noticed by anyone at the time defendant was convicted or sentenced and no exception was taken in the trial court. Ordinarily, we will not consider alleged error not raised below. However, in this case, we will take notice of an error of law apparent on the face of the record. Rule 7.19, Rules of Appellate Procedure.

and placed defendant on five years concurrent probation on each of the twelve misdemeanor convictions, and sentenced him to a maximum term of five years in the custody of the Corrections Division on each of the four felony convictions, ordering that those felony sentences be served consecutively.

### ANALYSIS

Defendant first assigns as error the trial court's denial of his motion to sever certain misdemeanor charges from other felony charges and for separate trials on the felony charges.

In his motion, the defendant said:

"* * * The Defendant asserts the request for severance of the charges because Defendant may wish to testify in his own behalf as to [one] of the charges and not place himself in the position of having to answer questions concerning the other. * * *"

■ As a general rule, a defendant charged with two or more offenses has the right to object to the joinder of those offenses in a single indictment or to the consolidation of separate indictments for trial. The Oregon approach is to strictly limit joinder, *State v. Fitzgerald,* 267 Or 266, 271, 516 P2d 1280 (1973), and the choice of the defendant as to joinder or severance should normally be accepted unless clearly improper, *State v. Boyd,* 271 Or 558, 569, 533 P2d 795 (1975). *See also, State v. Shields,* 280 Or 471, 571 P2d 892 (1977). An exception to the general rule is recognized by ORS 132.560(2), which provides:

"When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

■ In *State v. Boyd, supra,* the Supreme Court held that the test for determining whether separate charges are properly consolidated for trial as growing out of the same act or transaction is whether the charges are "unitary." 271 Or at 568. Whether charges are unitary is determined by reference to their factual interrelation in terms of the test recognized in *State v. Fitzgerald, supra,* where the Supreme

Court said "charges arise out of the same act or transaction if they are so closely linked in time, place and circumstances that a complete account of one charge cannot be related without relating details of the other charge." 267 Or at 273. *See also, State v. Parrish,* 45 Or App 99, 103, 607 P2d 778 (1980).

■    The evidence here discloses that all of the charges consolidated for trial were closely linked in time, place and circumstance. The entire episode took no more than twenty minutes. All of the victims and their property were together. The conduct of defendant constituted a single episode. We fail to see how a complete account of one of the charges could be related by witnesses without at the same time relating details of the other charges. By reference to their factual interrelation, we conclude the charges are unitary. The trial judge committed no error by consolidating them for trial. ORS 132.560(2); *State v. Boyd, supra; State v. Fitzgerald, supra; State v. Parrish, supra.*

■ ■    A defendant may also have the right to have consolidated charges severed for trial, even though their consolidation meets the test of ORS 132.560(2), if a consolidated trial would be unduly prejudicial to his defense. *State v. Shields, supra,* at 474. Here defendant's motion for severance indicated only that he "may wish to testify in his own behalf as to [one] of the charges and not place himself in the position of having to answer questions concerning the other."

Defendant's motion to sever was not clear as to which charges he wanted severed or why he wanted them severed. And while, as a result of defendant's motion, certain arguably tangential charges of Harassment, Carrying a Concealed Weapon and Possession of a Controlled Substance were severed from the charges ultimately submitted to the jury, defendant presented the trial court with no concrete reasons why separate trials on the remaining charges were required.

During his trial, defendant testified he had no recollection of the events which occurred in the park and that he was so befuddled by alcohol and drugs that he was incapable of forming the intent which is an element of

many of the crimes charged. He did not deny committing the acts charged, but rather disclaimed criminal responsibility for his conduct. The jury found him not guilty of the most serious offenses charged, four counts of Attempted Assault in the First Degree. The defendant was not prejudiced at trial by the joinder based upon his theory of the defense. *State v. Fitzgerald, supra; State v. Elam,* 37 Or App 365, 372, 587 P2d 491 (1978).

Defendant's second assignment of error challenges the trial court's order overruling his demurrer to the indictment in case No. 80-480-C, which described the alleged victim of the offenses as "full name unknown." The evidence indicates that the unnamed victim was never identified more precisely than as "Skipper" and that identification was only made during trial by a witness who did not know the man personally.

ORS 132.550 provides:

"The indictment shall contain substantially the following:

"* * * * *

"(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended * * *

"* * * * *."

In *State v. Cohen,* 289 Or 525, 529, 614 P2d 1156 (1980), the Supreme Court said:

"* * * [T]he objects of an indictment are (1) to inform the defendant of the nature of the crime with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the defendant to avail himself of his conviction or acquittal thereof if he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction. *State v. Sanders,* 280 Or 685, 687-88, 572 P2d 1307 (1977); *State v. Smith,* 182 Or 497, 500-01, 188 P2d 998 (1948). We have further recognized that article I, section 11, of the Oregon Constitution guarantees that persons accused of a crime have the right to 'demand the nature and cause of the accusation against him." *State v. Sanders, supra* at 688."

■     Where matters or things necessary to be alleged in an indictment are unknown to the grand jury, it is proper to allege that they are unknown. *State v. Green,* 245 Or 319, 326-27, 422 P2d 272 (1966); *see also, State v. Schwensen,* 237 Or 506, 526, 392 P2d 328 (1964)(cause of death unknown); 2 Wharton's Criminal Procedure (12th ed) § 279, p 94; *see* Fed. R. Crim. P. 7(c)(1) (the means by which the defendant committed the offense unknown).

■     Defendant argued below, and suggests here, that it was at least incumbent upon the grand jury to describe the victim as "a white male" because admittedly it knew, or reasonably could have known, that much about the victim. We do .not agree. The elements of the crimes charged having been alleged, further description of the victim could properly be left to pretrial discovery.[9] *State v. Nussbaum,* 261 Or 87, 97, 491 P2d 1013 (1971) *State v. House,* 37 Or App 131, 133, 586 P2d 388 (1978); *State v. Shadley/Spencer-/Rowe,* 16 Or App 113, 119-21, 517 P2d 324 (1973).

■     Defendant next assigns as error the trial court's refusal to merge all four convictions for Attempting to Use a Dangerous Weapon into one conviction and sentence and its refusal to merge each conviction and sentence for Menacing where there was a corresponding conviction for Recklessly Endangering the same victim.[10]

We cannot determine whether defendant is arguing he should receive one merged Menacing/Recklessly Endangering conviction for each victim, or whether he is arguing he should receive only one merged Menacing/Recklessly Endangering conviction for the entire episode; nor can we tell whether the defendant is acquiescing in the entry of one or more separate convictions of Attempting to Use a Dangerous Weapon and one or more merged Menacing/Recklessly Endangering convictions.

---

[9] ORS 135.805 et seq. Defendant made no motion for a continuance in order to pursue discovery concerning the unnamed victim or to prepare for trial on this indictment.

[10] In *State v. Cloutier,* 286 Or 579, 582-83, 596 P2d 1278 (1979), Justice Linde wrote:

"Courts and commentators have long recognized the problem of attaching 'multiple consequences' to a 'single criminal act' or of dealing with the 'multiple criminal offender' to be one of the most vexing in criminal law."

The state agrees with the overall thrust of defendant's contentions concerning merger of some of these convictions but rejects defendant's analysis of the questions presented by this assignment of error, as well as the specific results reached by the defendant. In its brief in this court, the state concedes:

> "* * * It seems to us that the legislature could not have intended that the act of threatening a single victim with a single weapon on a single occasion should call for more than one conviction and sentence, and that therefore, the crimes of menacing * * * and the crimes of recklessly endangering * * * should 'merge,' for the purposes of conviction and sentencing, with the charges of attempting to use a dangerous weapon against * * *, and that the * * * judgments placing defendant on probation on these menacing and 'recklessly endangering' convictions should be vacated. * * *"

We agree. Our analysis of the question leads us to the conclusion that the legislature could not have intended the result reached in this case.

Convicting defendant of three offenses, Attempting to Use a Dangerous Weapon, Recklessly Endangering and Menacing, when all three convictions stem from the same conduct directed against the same individual victim, is clearly contrary to legislative intent and the most recent guidance from our Supreme Court. *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980); *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979); *see also, State v. Dinkel,* 49 Or App 917, 621 P2d 626 (1980); *State v. Perkins,* 45 Or App 91, 607 P2d 1202 (1980). Therefore, we hold that the convictions for Menacing and Recklessly Endangering merge for the purposes of conviction and sentencing with the corresponding conviction for Attempting to Use a Dangerous Weapon against the same victim.[11]

---

[11] The conviction for Attempting to Use a Dangerous Weapon (Anderson/80-481-C) and the conviction for Recklessly Endangering (Anderson/80-281-C) merge for purposes of conviction and sentencing.

The conviction for Attempting to Use a Dangerous Weapon (Steele/80-478-C) and the conviction for Recklessly Endangering (Steele/80-281-C) merge for purposes of conviction and sentencing.

The conviction for Attempting to Use a Dangerous Weapon (Marsing/80-479-C) and the convictions for Recklessly Endangering (Marsing/80-479-C) and Menacing (Marsing/80-479-C) merge for purposes of conviction and sentencing.

■ Another question presented by defendant's third assignment of error is whether the trial court erred in denying his post-trial motion to merge the four convictions for Attempting to Use a Dangerous Weapon into one conviction and, if that question is decided against him, the propriety of imposing consecutive sentences on the four felony convictions. We conclude that the trial court properly denied the defendant's motion to merge the four convictions for Attempting to Use a Dangerous Weapon into one conviction. ORS 131.505(3); *State v. Gilbert,* 281 Or 101, 574 P2d 313 (1978); *State v. Gratz,* 254 Or 474, 461 P2d 829 (1969); *State v. Dinkel, supra; State v. Dillman,* 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979).

While Attempting to Use a Dangerous Weapon is classified among firearms offenses, ORS 166.180 et seq., rather than among assault and related offenses, ORS 163.160 et seq., there can be little doubt that each attempted use of a weapon against a different person is a separate offense. Had defendant been charged with violating ORS 166.220 in the other way that statute may be violated, i.e., by merely carrying a dangerous weapon with intent to use it but not in fact using or attempting to use it, there might be some merit to his contention that there is no victim involved in the crime and, hence, only one offense was committed no matter how many persons he may have intended to injure. *See State v. Perkins, supra.* Here, defendant was charged in four counts with having attempted to use a weapon against four separate persons. The jury of necessity found that the weapon was specifically directed against each of those four persons. The entry of four convictions for Attempting to Use a Dangerous Weapon was therefore proper.

Next, we consider the propriety of imposing separate sentences on the four felony convictions.

■ ■ Here defendant committed four identical offenses against four persons at the same time and place. His conduct can clearly be said to involve a single criminal

---

The conviction for Attempting to Use a Dangerous Weapon (full name unknown/80-480-C) and the convictions for Recklessly Endangering (full name unknown/80-480-C and Menacing (full name unknown/80-480-C) merge for purposes of conviction and sentencing.

episode. Whether his conduct involves a single objective is debatable. No statute in Oregon authorizes or prohibits multiple sentences when the same criminal statute is violated more than once in a single criminal episode. *State v. Garcia, supra,* at 426.

In attempting to discern legislative intent, and with due regard for *stare decisis,* we have examined several recent decisions of the Supreme Court and of this court which have dealt with the question of *sentencing* the multiple criminal offender. We find that those cases can be divided into three major categories. First, cases such as *State v. Garcia, supra; State v. Cloutier, supra; State v. Abercrombie,* 50 Or App 655, 623 P2d 1141 (1981); *State v. King,* 42 Or App 721, 601 P2d 845 (1979); and *State v. Steele,* 33 Or App 491, 577 P2d 524 (1978), were concerned with a defendant who has committed multiple offenses against a single victim. In such cases the courts have generally held that if the multiple offenses occur simultaneously (or substantially simultaneously) in a single criminal episode which has a single objective, then the multiple offenses merge for purposes of conviction and sentence, absent clear legislative intent to the contrary.[12] This is not to say that such offenses may not be charged and prosecuted separately, for it is clear that they may, but rather that if such charges and prosecutions result in more than one conviction, those multiple convictions would be merged, and only one sentence would therefore be appropriate.

Second, cases such as *State v. Welch,* 264 Or 388, 505 P2d 910 (1973); *State v. Perkins, supra; State v. Applegate,* 39 Or App 17, 591 P2d 371 (1979); and *State v. Dillman, supra,* are concerned with a defendant who has committed several offenses involving one or more victims depending upon the prosecution's theory of the case and how one views the facts. The state's theory of the case and the charges actually brought may alter the result in such cases. Here the courts have generally held that if one views the facts as presenting a single victim, despite the presence

---

[12] Doubts about legislative intent are to be resolved in favor of the defendant. *State v. Cloutier,* 286 Or 579, 587-88, 596 P2d 1278 (1979). Accord: *Whalen v. United States,* 445 US 684, 100 S Ct 1432; 63 L Ed 2d 715 (1980).

of more than one person, as in *Welch* and *Perkins,* only one conviction and sentence is appropriate. *Applegate* did not decide the issue, but it presents a classic demonstration of the legal gymnastics forced upon trial and appellate judges who must attempt to resolve these questions in the absence of clear legislative guidance.[13]

---

[13] In *State v. Applegate,* 39 Or App 17, 591 P2d 371, *rev den* (1979), the

"[d]efendant was indicted for three crimes alleged to have been committed as part of a single transaction: Count I—third degree robbery of Billy D. Dixon 'by striking [him] about the head while in the course of committing theft of * * * [Dixon's] lawful currency'; Count II—unauthorized use of Mr. Dixon's automobile; Count III—first degree theft by taking 'lawful currency * * * the property of George K. Rowe, doing business as Roaring West Tavern.' Defendant was convicted and sentenced on all counts. * * * [O]n appeal [the] defendant contend[ed] that the three counts should [have been] merged and a single conviction entered and single sentence imposed.

"The evidence established that Mr. Rowe owned the Roaring West Tavern and Mr. Dixon was the manager. The evening of July 22, 1977, Dixon was tending bar and defendant was a customer. When the tavern closed, Dixon and defendant left together to socialize elsewhere. Dixon placed over $500 in tavern receipts in the trunk of his car, presumably to deposit in the bank the next day. Dixon and defendant then went tavern-hopping for several hours, traveling in Dixon's 1970 Cadillac. Later, by which time it was the early morning hours of July 23, defendant struck Dixon in the face and head and demanded and took the money in his wallet—the basis of the robbery charge. Defendant then drove off in Dixon's car—the basis of the unauthorized-use charge. When the car was recovered a couple of days later, the tavern receipts were gone from the trunk—the basis of the charge of theft of *Rowe's* property.

"* * * * *

"Defendant was sentenced to serve a term not to exceed five years for robbery, five years for theft and four years for unauthorized use. The robbery and theft sentences run concurrently. The unauthorized-use sentence runs consecutively. [We said: ']were we to reach the merits, we might well find no merger of the unauthorized-use charge. It is more likely that we would find that the robbery and theft charges merge.['] * * *

"Had defendant been charged with robbery, i.e., use of force in the course of taking Dixon's automobile, and separately with unauthorized use of Dixon's automobile, the unauthorized-use charge might merge * * *. On the other hand, in a closely analogous situation, we have specifically held that an unauthorized-use charge does not merge. * * * (Citations omitted.)

"We may have thus created an anomaly. An element of theft is to deprive another of property, which means to:

" 'Withhold property of another or cause property of another to be withheld from him permanently or for so extended a period or under such circumstances that the major portion of its economic value or benefit is lost to him * * *.' ORS 164.005(2)(a)

"A person commits the crime of unauthorized use of a vehicle when he 'uses another's vehicle * * * without consent of the owner.' ORS 164.135(1)(a). Common sense suggests that theft—to intend to permanently deprive another of his automobile—is a more serious matter than to merely use another's

Third, cases such as *State v. Gilbert, supra; State v. Gratz, supra; and State v. Dinkel, supra,* are concerned with a defendant who has committed multiple offenses against multiple victims. In such cases the courts have generally held that, with few exceptions, in crimes against the person (and perhaps in crimes against property) there are as many offenses as there are individual victims.

We reiterate that legislative intent in these cases is, at best, unclear, and, at worst, non-existent. Trial and appellate courts have been struggling with these questions for a decade or more.

*State v. Cloutier, supra,* must be analyzed on its own merits, since it is cited by both the parties in this case and it has been the point of departure for any discussion of the problem of sentencing the multiple offender since it was decided in 1979. On its facts, *Cloutier* made no new

---

automobile without consent, i.e., with no intent to permanently deprive. Yet the possible anomoly is that our cases now suggest that the more serious matter of use of force (robbery) to permanently deprive another of a vehicle (theft) can only be punished as the single crime of robbery; but the less serious matter of a robbery followed by nonconsensual use of the victim's automobile without intent to permanently deprive can be punished as two separate crimes.

"Nor is it at all clear whether the robbery and theft charges merge in this case. A person cannot be separately convicted and sentenced for robbery based on taking the victim's property and theft based on taking the same property. * * * But the wrinkle in this case is that the robbery charge was based on taking Dixon's money from his wallet, and the theft charge was based on taking the tavern receipts, alleged to be the property of Rowe, the tavern owner. Were we to reach the question, the answer might be found in *State v. Dillman,* 34 Or App 937, 580 P2d 567 (1978). That was a bank robbery case; the defendant had pointed a gun at and obtained money from four different tellers. The question was whether his conduct constituted four separate robberies, or only one. In the course of holding there were four robberies, we stated that 'the tellers are considered the "owners' of the cash stolen from them and therefore the victims of the property crime aspects of robbery as well.' 34 Or App at 941. This reasoning might mean that Dixon should be regarded as the owner of the tavern receipts, which in turn would support the conclusion that the robbery and theft convictions merge. On the other hand, *Dillman* did not necessarily hold that the state is foreclosed from alleging another person's ownership, thereby creating a different victim, which in turn would negate merger under the doctrine of *State v. Gilbert,* 281 Or 101, 574 P2d 313 (1978).

"* * * * *." 39 Or App at 19, 23-25.

For more of the same, *see Irby v. United States,* 390 F2d 432 (DC Cir 1967) and *Downs v. State,* 202 Cal App 2d 609, 20 Cal Rptr 922 (1962).

law. The narrow question decided viz., that a person charged with burglary and theft may be convicted and sentenced only for the burglary, had been answered almost a decade earlier in *State v. Woolard*, 259 Or 232, 484 P2d 314 (1971). *Cloutier* and *Woolard* examined the legislative intent in such cases and concluded the legislature probably intended the result expressed by the court. We say "probably," because the legislative intent is at best, speculative. *Cloutier, supra,* at 587. Unfortunately, the legislature has not enunciated a coherent sentencing policy to guide trial courts, but rather has left trial judges with the perplexing problem of resolving such questions on an almost *ad hoc* basis. *Cloutier* has done little to simplify the task, because it merely reaffirmed *Woolard*. [14] Justice Linde's extensive dicta in *Cloutier* are just that, and nothing more. Insofar as this case is concerned, the dicta in *Cloutier* do not resolve the issues presented.[15]

We find that this case falls into the third category of cases discussed, i.e., those involving multiple crimes against multiple victims. We therefore conclude that multiple sentences were authorized.[16] In response to the defendant's objection to the imposition of consecutive sentences on his four felony convictions, we find the trial court committed no error. *State v. Garcia, supra; State v. Biles,* 287 Or 63, 597 P2d 808 (1979); *State v. Jones,* 250 Or 59, 440 P2d 371 (1968); *State v. Dinkel, supra; State v. Perkins, supra.*

---

[14] *Cloutier* reaffirmed *State v. Woolard*. "That is the specific issue, and it is all we decide in this case." 286 Or 596, 598-99.

[15] "We leave it to the Court of Appeals in the first instance to develop criteria for multiple convictions and sentencing in * * *" cases not controlled by *Cloutier-/Woolard.* 286 Or at 599.

[16] *See See State v. Knowles,* 289 Or 803, 813, 830-31, 618 P2d 1245 (1980) (Tanzer, J., specially concurring).

The underlying considerations in multiple punishment cases are entirely different from those involved in multiple prosecutions, and a test which is appropriate in one class of cases is not necessarily appropriate in the other class. *State v. Brown,* 262 Or 442, 450, 459, 497 P2d 1191 (1972).

We frankly admit to less than 100 percent certainty with the result in this case. The lack of clear legislative direction has resulted in decisions which arguably are irreconcilable. Perhaps this is unavoidable because the result in a given case may be determined as much or more by the state's theory of its case and

The dissent argues this result is contrary to *Cloutier, supra,* and our recent decision in *Perkins, supra.* Whatever *Cloutier* holds, it is clear it did not resolve the questions raised here, i.e., may this defendant be convicted of four felonies and, if so, may he be sentenced on each of the four convictions? 286 Or at 598. The ruling in *Cloutier* was specifically limited to the facts of that case, i.e., multiple crimes against a single victim, and the extensive dicta of Justice Linde are not binding precedent, not only because they are dicta, but also because the dicta themselves disclaim addressing the specific questions at issue here. Finally, it is also clear that the Supreme Court was not of one mind in the matter (Howell, J., specially concurring after dissenting in *Woolard,* and Tongue, J., dissenting strongly). *Perkins, supra,* presents interesting questions; however, it is not at odds with our conclusion here. In *Perkins,* the

> "defendant and an accomplice entered a restaurant during the early morning hours * * * before it opened for business. At that time, only a cook and a waitress were present. The accomplice had entered via the back door and surprised the cook by leaping out from behind a doorway and threatening her with a knife. She screamed several times and he again brandished the knife and told her to be quiet. When a waitress, who was in the dining room, heard the cook scream, she * * * went toward the back to investigate. At that point, defendant, wielding a club, came out from the back and ordered her to remain silent and go into the kitchen area. Defendant stood guard over the two women, swinging the club, while the accomplice emptied the cash from a file cabinet in the office. The entire episode lasted from three to five minutes, then both men ran out the back.

> "[Perkins] was charged with, and verdicts of guilty were returned on, one count of theft, two counts of robbery in the second degree * * *, and two counts of robbery in the first degree. The trial court 'merged' the theft and robbery in the second degree charges and, over defendant's objection, entered judgments of conviction and sentence on the robbery in the first degree charges."

the nature of the charges actually brought than by statutes or legal precedent. Whether the result we have reached is consistent with Justice Linde's dicta in *Cloutier* remains to be seen.

We found that Perkins' ultimate criminal objective was theft from the restaurant safe and concluded on the authority of *Cloutier* that only one *sentence* could be imposed on the two surviving robbery convictions.

In *State v. Dillman, supra,* defendant, in the course of holding up a bank, pointed his gun at four separate tellers and ordered each to deliver the money in his respective till. We concluded that each teller was a victim of robbery and there were four separate offenses. 34 Or App at 941-42. *Dillman* then stated:

> "Because there were four separate offenses, there was no error in sentencing defendant on each conviction. [Citation omitted.]" 34 Or App at 942.

*Dillman* relied principally on *State v. Gilbert, supra,* where the court construed ORS 131.505(3) to permit prosecution on six separate indictments for theft because each person whose property was wrongfully withheld was a "victim" for purposes of determining the number of offenses.

In *Perkins* we distinguished *Dillman,* by finding that the facts in *Perkins* did not involve, as the state contended, a question of whether the two employees were "owners" within the meaning of ORS 164.395(1)(b) and ORS 164.005(4), i.e., where the person threatened is the person compelled to hand over the property. We interpreted *Cloutier* to hold that it did not necessarily follow that a defendant could be convicted and sentenced for multiple crimes simply because there were multiple victims within the meaning of ORS 131.505(3) and that, ultimately, legislative intent would govern.

The interesting question presented by *Perkins* is what would have been the result if Perkins had been indicted for one count of robbery in the first degree (victim-/restaurant), one count of kidnapping (victim/waitress), and multiple counts of menacing and/or recklessly endangering another person and/or coercion (victims/cook and waitress)? It is certainly arguable that more than one conviction and sentence would be permissible in such a case, assuming conviction on multiple counts involving multiple named victims. If so, it appears the result may be determined as much by what the prosecutor does as it is by what the defendant did.

*Perkins* really tells us that *in view of the way the prosecutor presented the charges* to the court and jury, there was really only one crime, i.e., one robbery/theft from one victim (restaurant/cook/ waitress). We do not disagree with *Perkins* on its facts, but emphasize that neither *Cloutier* nor *Perkins* stands for the proposition that only one sentence may be imposed regardless of the number of persons who are the victims of multiple crimes, even if those multiple crimes are committed in a single criminal episode with a single criminal objective. Whatever the legislative intent in these types of cases, the analysis found in the dissent appears to be "tortured" reasoning which flies in the face of ORS 131.505(3), not to mention common sense.

In passing, while unquestionably a citizen who is exposed to a criminal threat, injury or loss is a "victim" in the sense that he or she is victimized, it should never be forgotten that a crime is an offense against the peace and dignity of the state and that a "victim" of every crime is the people of the state. It is doubtful whether the people of Oregon ever intended to send a message through their legislature to criminals that no greater risk of conviction and punishment is involved regardless of how many citizens or their property are jeopardized so long as the criminal is embarked upon a single criminal episode with a single criminal objective.

There remains only the defendant's fourth assignment of error, which has obvious merit: that the trial court erred in permitting the jury to convict him of offenses for which he was not charged and in sentencing him on those charges. We agree. The state confesses error. The trial court is directed to vacate the convictions and judgments for Menacing in cases No. 80-481-C (Anderson) and No. 80-478-C (Steele).[17]

Affirmed in part, reversed in part and remanded for resentencing.

---

[17] N 8, *supra.*

On appeal, the defendant only complained about the conviction and sentence for Menacing in case No. 80-478-C (Steele). The state concedes that the conviction and sentence for Menacing in case No. 80-481-C (Anderson) is equally impermissible.

**RICHARDSON, P.J.,** dissenting in part.

I dissent from the majority's holding that defendant can be separately sentenced for more than one count of attempting to use a dangerous weapon. That holding is contrary to recent Supreme Court decisions regarding sentencing of the "multiple criminal offender," and is in direct conflict with our decision in *State v. Perkins,* 45 Or App 91, 607 P2d 1202 (1980).

In *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979), the Supreme Court established the *general* rule that, for a defendant's multiple offenses to "merge" for purposes of conviction and/or sentencing, the offenses must have been committed as part of a single criminal episode in which the defendant had a single criminal objective. *See* 286 Or at 595-96; ORS 131.505(4). However, the court in *Cloutier* did not attempt to establish conclusive guidelines for the penal disposition in all "multiple offender" situations, and it expressly left to this court the task of developing "criteria for multiple convictions and sentencing" in situations involving "the commission of offenses against several victims in a single criminal act or episode." 286 Or at 598-99.

We undertook that task in *Perkins,* where we observed at the outset of our opinion:

"Resolution of the question requires application of *Cloutier* principles to a situation expressly left open in that opinion, namely, where the crime is perpetrated against more than one person." (Cite omitted.) 45 Or App at 93.

In *Perkins,* the defendant entered a restaurant with the criminal objective of stealing the restaurant's cash. Two restaurant employees were on the premises, and the defendant threatened them with weapons and stood guard over them while an accomplice consummated the theft. The defendant was charged with and found guilty of two counts of first degree robbery for his acts against the employees, as well as the theft and two ancillary offenses he committed during the course of the episode. The trial judge "merged" the theft and two ancillary charges into the first degree robbery convictions, but sentenced the defendant separately for both robberies. The defendant contended on appeal that the two robberies should be treated as

"one offense for sentencing purposes." 45 Or App at 93. We agreed, concluding that the defendant's "ultimate criminal objective * * * was theft from the restaurant safe," 45 Or App at 96, and that he therefore could not receive separate or cumulative penalties for the two robberies committed in the course of carrying out his objective. In sum, we concluded in *Perkins* that the single criminal episode/single criminal objective "merger" formula of *Cloutier* was applicable to cases involving multiple victims.

In the present case, the majority acknowledges that all of the defendant's offenses were part of a single criminal episode. 52 Or App at 522. The majority further states that it is "debatable" whether the defendant had a single criminal objective. 52 Or App at 522-23. Although I find the single objective issue to be less debatable than does the majority, I understand the majority to be at least assuming that this is a single episode/single objective situation and to be addressing the question whether the defendant can be separately sentenced for crimes against different victims which were committed during the episode. The majority reaches the opposite answer to that question from our answer in *Perkins,* and, in my view, fails to recognize that the question was answered in *Perkins.*

The most graphic illustration of the majority's misunderstanding of the import of *Perkins* is its statement that "[h]ere the courts have generally held that if one views the facts as presenting *a single victim, despite the presence of more than one person,* as in * * * *Perkins,* only one conviction and sentence is appropriate." 52 Or App at 523-24; emphasis added. However, the facts in *Perkins cannot* be viewed as involving a single victim. The defendant there committed at least three intentional crimes against three different victims: the two robberies against the two restaurant employees and the theft against their employer.[1] The question in *Perkins,* like the question here,

---

[1] The majority also suggests that the prosecutor's decision concerning what charges to bring can be determinative of the number of convictions and sentences which can arise from a criminal episode. Undoubtedly, there are situations where the prosecutorial decision *can* have that practical effect. Where that occurs, however, it does not mean that the result is appropriate; it means that the prosecutorial decision has been made, deliberately or inadvertantly, to circumvent "merger" and related principles which, together with other objectives, are designed to prevent excessive prosecution and punishment for a defendant's conduct.

was whether the fact that there was more than one victim made the defendant's offenses separately punishable, notwithstanding their commission as part of a single episode with a single criminal objective. I believe that question was correctly answered in *Perkins.*

In addition to its failure to ascribe appropriate weight to the holding in *Perkins,* the majority opinion also disregards the principal rationale for that holding and for similar holdings in other recent cases. The majority states that "[n]o statute in Oregon authorizes or prohibits multiple sentences when the same criminal statute is violated more than once in a single criminal episode." 52 Or App at 523. We resolved a similar uncertainty as to legislative intent in *Perkins* by quoting with approval from *Bell v. United States,* 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955):

> "'"When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. * * *" 349 US at 83-84.'" 45 Or App at 96.

Much of the authority the majority opinion cites predates *Cloutier* and *Perkins, e.g., State v. Dillman,* 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979), and the continuing vitality of that authority is doubtful to the extent it is not consistent with recent cases. *State v. Dinkel,* 49 Or App 917, 621 P2d 626 (1980), upon which the majority appears to rely heavily, is not in point. That case involved the question of whether numerous kidnappings merged with one another and with a robbery which was committed as part of the same criminal transaction. We followed *State v. Garcia,* 288 Or 413, 605 P2d 671 (1980), in holding that, *under the kidnapping statutes,* it is a question of fact whether an interference with another's liberty committed in conjunction with another crime constitutes the separate crime of kidnapping. *See* ORS 163.225. *Dinkel* has no relevance to the issue of multiple punishments for multiple offenses, unless the offenses include kidnapping. *See* 49 Or App at 926, n 5.

Finally, I agree with the majority that *Cloutier holds* only that the Supreme Court's earlier decision in *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), had not been legislatively overruled. However, I do not agree with the majority's suggestion that *Cloutier* made no new law or that the language in the *Cloutier* opinion which goes beyond the *Woolard* issue is dicta which this court is free to disregard. Given the present scheme of Oregon's appellate system, one of the principal roles of the Supreme Court is to resolve issues of law which go beyond the narrow issues which *require* decision in particular cases. In my view, we are required to follow *Cloutier,* and we should adhere to our own decision of a year ago in *Perkins.*

For the foregoing reasons, I respectfully dissent from the majority's conclusion that the defendant can be separately sentenced for the four attempting to use a dangerous weapon offenses.[2]

---

[2] *Perkins* does not determine whether defendant can be separately *convicted* of those offenses, as distinquished from being separately *sentenced.* If it were necessary for me to reach that issue in this dissenting opinion, I would conclude that the separate convictions are also improper.