185 P.3d 229

**STATE of Hawai'i, Respondent/Plaintiff–Appellee,**

v.

**Anthony Kalani AKAU, Petitioner/Defendant–Appellant.**

**No. 26989.**

Supreme Court of Hawai'i.

May 30, 2008.

Christopher R. Evans, Honolulu, for petitioner/defendant-appellant, on the application.

Loren J. Thomas, Deputy Prosecuting Attorney, for respondent/plaintiff-appellee.

MOON, C.J., LEVINSON, and DUFFY, JJ.; NAKAYAMA, J., dissenting; ACOBA, J., concurring separately.

Opinion of the Court by MOON, C.J.

On February 8, 2008, this court accepted a timely application for a writ of certiorari, filed by petitioner/ defendant-appellant Anthony Kalani Akau on January 7, 2008, requesting this court review the Intermediate Court of Appeals' (ICA) October 11, 2007 judgment on appeal, entered pursuant to its September 21, 2007 summary disposition order (SDO). Therein, the ICA affirmed the Circuit Court of the First Circuit's [1] October 15, 2004 judgment, convicting Akau of, and sentencing him for,—pursuant to his conditional guilty plea—three counts of promoting a dangerous drug in the second degree, in violation of Hawai'i Revised Statutes (HRS) § 712–1242 (1993 & Supp.2003).[2] Oral argument was held on March 6, 2008.

Briefly stated, on three separate occasions in October and November 2002, Akau unwittingly sold crystal methamphetamine to un-

---

1. The Honorable Michael A. Town presided over the underlying proceedings.

2. HRS § 712–1242(1)(c) (1993) provides: "A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly ... [d]istributes any dangerous drug in any amount."

dercover police officers. The drug buys led to the execution of a search warrant of Akau's person and personal effects, which, in turn, led to charges of promoting a dangerous drug in the third degree, in violation of HRS § 712–1243 (1993), and unlawful use of drug paraphernalia, in violation of HRS § 329–43.5 (1993) [hereinafter, the search warrant case or possession case]. Approximately ten months later (and after Akau pled no contest and was sentenced as a first-time drug offender in the search warrant case), Akau was indicted on three counts of promoting a dangerous drug in the second degree based upon the three undercover drug buys [hereinafter, the drug buy case or distribution case]. After unsuccessfully moving to dismiss the drug buy case based upon the compulsory joinder statutes, HRS §§ 701–111(1)(b) (1993) (barring a subsequent prosecution for "[a]ny offense for which the defendant should have been tried on the first prosecution") and 701–109(2) (1993) (requiring joinder of criminal offenses "based on the same conduct or arising from the same episode"), Akau entered a conditional guilty plea, pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 11(a)(2) (2007),[3] and was sentenced.

On application, Akau apparently argues that the ICA erred in affirming, *inter alia*, the circuit court's denial of his motion to dismiss. Specifically, Akau asserts—as he did before the ICA—that the circuit court should have dismissed the drug buy case for failure on the part of respondent/ plaintiff-appellee State of Hawai'i (the prosecution) to bring all the charges in one action, as required under HRS §§ 701–111(1)(b) and 701–109(2), because the possession and paraphernalia offenses and the distribution offenses "[arose] from the same episode."

As discussed more fully *infra*, we hold that the ICA erred in affirming the circuit court's denial of Akau's motion to dismiss. Accordingly, we reverse the ICA's October 11, 2007

judgment on appeal and the circuit court's October 15, 2004 judgment of conviction in the drug buy case.

## I. BACKGROUND

### A. Factual and Procedural Background Leading Up to the Drug Buy Case

The following undisputed findings of facts (FOFs) are taken from the circuit court's order denying Akau's motion to dismiss the drug buy case:

1. On October 8, 2002, fronting 825 Keeaumoku Street, an undercover Honolulu Police Department (hereinafter "HPD") police officer purchased 0.121 grams of crystal methamphetamine from [Akau] for twenty dollars.

2. On October 22, 2002, fronting 825 Keeaumoku Street, a second undercover police officer purchased 0.094 grams of crystal methamphetamine from [Akau] for twenty dollars.

. . . .

4. On November 21, 2002, inside the men's restroom of Daiei located at 801 Kaheka Street, the second undercover police officer purchased 0.158 grams of crystal methamphetamine from [Akau for twenty dollars].

5. Based on the [three] undercover transactions, a search warrant was obtained and executed on [Akau] and his personal effects on November 26, 2002. [Akau] was never arrested for the [three] underlying drug transactions. [4]

6. Upon execution of the search warrant fronting 835 Keeaumoku Street, 0.351 grams of crystal methamphetamine were found in [Akau's] possession, which resulted in [Akau's] arrest for [p]romoting a [d]angerous [d]rug in the [t]hird [d]egree, in violation of [HRS § 712–1243], and [u]nlawful [u]se of [d]rug [p]araphernalia, in violation of HRS [§ ]329–43.5(a)[.]

---

3. HRPP Rule 11(a)(2) states:

> With the approval of the court and the consent of the [prosecution], a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to seek review of the adverse determination of any specific pretrial motion.

> A defendant who prevails on appeal shall be allowed to withdraw the plea.

4. As indicated by the prosecution, Akau "was in fact arrested after he was indicted on three of the distribution offenses as noted in FOF No. 10."

7. On December 5, 2002 [Akau] was charged via complaint with [p]romoting a [d]angerous [d]rug in the [t]hird [d]egree and [u]nlawful [u]se of [d]rug [p]arapher-nalia[ ] in [the search warrant case], based upon the illegal narcotic and drug para-phernalia recovered during the execution of the search warrant.

8. On February 6, 2003, [Akau] pled [n]o [c]ontest as charged in [the search warrant case].

9. On April 14, 2003, [Akau] was sentenced [as a first-time drug offender] to[,] *inter alia*, a term of five (5) years of probation (with one (1) year of incarceration), pursuant to HRS [§ ]706–622.5 [ (Supp.2003) ] in [the search warrant case].

10. On October 21, 2003, [Akau] was indicted in the instant matter for three counts of [p]romoting a [d]angerous [d]rug in the [s]econd [d]egree, in violation of HRS [§ ]712–1242(1)(c) ..., based on the October 8, 22, and November 21, 2002, undercover drug transactions.

B.  *Motion to Dismiss the Drug Buy Case*

On March 22, 2004, Akau filed a motion to dismiss the drug buy case, pursuant to HRS §§ 701–111(1)(b) and 701–109(2). HRS § 701–111 provides in relevant part that:

**When prosecution is barred by former prosecution for a different offense.** Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:

(1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701–110(3) [ (1993) [5]] and the subsequent prosecution is for:

. . . .

**5.** HRS § 701–110(3) provides in relevant part: "There is a conviction if the prosecution resulted in ... a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty or nolo contendere accepted by the court."

(b) *Any offense for which the defendant should have been tried on the first prosecution under section **701–109** unless the court ordered a separate trial of the offense[.]*

(Some emphases in original and some added.) In turn, HRS § 701–109, also known as "the compulsory joinder of offenses requirement," *State v. Aiu*, 59 Haw. 92, 95, 576 P.2d 1044, 1047 (1978), provides in relevant part that:

(2) Except as provided in subsection (3) of this section [ ( authorizing the court to order separate trials), quoted *infra* note 10,] *a defendant shall not be subject to separate trials for multiple offenses* based on the same conduct or *arising from the same episode*, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

(Emphases added.) Based on these two statutes, Akau argued that the undercover drug buys were "part and parcel of a search warrant and as such, both the purchase [of the drugs] and the issuance of a search warrant can and should be deemed 'the same episode.' " The prosecution opposed Akau's motion. A hearing was held on May 13, 2004 at which time Akau called Lawrence Grean, the head of the Screening Intake Division at the Prosecuting Attorney's Office, to testify regarding the circumstances under which undercover buys or sales of narcotics that lead to a search warrant are prosecuted or are not prosecuted. Specifically, the following testimony was elicited:

Q: [By Akau's Counsel] ... Now, in those cases where the undercover or the confidential informant sales/buys has resulted in search warrants, is it the practice of your office, Mr. Grean, to then prosecute the actual buys and/or sales in spite of the fact that the search warrant case has been prosecuted? Do you understand what I'm driving at?

In the search warrant case, Akau entered a no contest plea which was accepted by the circuit court resulting in the circuit court's judgment of conviction and sentence; accordingly, under HRS § 701–110(3), the search warrant case resulted in a conviction for the purposes of HRS § 701–111(1).

# 48

A: [By Grean] I—I think so. The answer to that is it depends.

Q: All right. And will you please elucidate all of us as to why it depends?

A: Well, if you have undercover police officers—let's take that scenario—

Q: Thank you.

A: —and they make three or four buys from a suspect, and then as a result of those buys the search warrant is prepared and executed,—

Q: Yes?

A: —it's quite possible that the undercover buys cannot go forward because the police officer, the undercover officer, is still working undercover and cannot surface at that time.

Q: And then?

A: So the prosecutor's office would go ahead with the search warrant case. And at a later date, when it's—when the undercover officer is going to be available and surface, then we would go ahead with those cases.

. . . .

Q: Now, with respect to the buys/sales involving an undercover officer, you mentioned a circumstance under which sometimes those cases would be postponed, to wit, that the officer is still serving in an undercover capacity and therefore your office has to wait until—until that—that person's undercover status has been lifted. Is that true?

A: Right.

. . . .

Q: ... Off the top of your mind, you cannot recollect a case where an undercover officer has done the buy and the sale and which then leads of course to a search warrant on a suspect; right? The suspect is—

A: The answer is yes.

Q: Right. And the suspect is prosecuted on the search warrant case but then is not prosecuted for the buys and sales, even though there was an undercover officer involved in the undercover buys and sales.

. . . .

A: Well, it—if the undercover officer has let's say made four buys and he can't surface at the—at the time of the buys, and he does surface later on, then there wouldn't be—unless there's some other reason I—I don't—I'm not aware of, he—he—the suspect would then be prosecuted for those four buys.

. . . .

Q: ... Now, can you say as a matter of fact that in all circumstances when there is an undercover officer involved with the sales and the buys that—that, even though you've made a search warrant case on the suspect, that you always prosecute those buys and sales?

A: Well, I would think so, yes.

Additionally, the circuit court questioned Grean as follows:

Q: [By the circuit court] Mr. Grean, in your mind, correct me if I'm not hearing you right, it's a matter of prosecutorial discretion if there's some buys and then later a search warrant and the undercover officer is able to surface, for lack of a better word, and they're prosecuting, it's prosecutorial discretion whether to charge separate charges?

A: Absolutely.

Akau also called HPD Officer Shellie Silva, who executed the search warrant on Akau, as a witness. Officer Silva testified, in relevant part, as follows:

Q: [By Akau's counsel] Is there any reason why, Officer, you decided to get three or four purchases?

A: [By Officer Silva] *In order to get the search warrant, um, you need the purchases done, and the more purchases you have, the more days you have to execute the warrant from the last purchase.*

Q: Okay. Now, earlier this afternoon I asked you about that, and is it fair to say that, for instance, if you only made one undercover purchase, more likely than not the search warrant would be good for like one day?

A: Yes.

Q: Whereas, if you made three or four purchases, undercover purchases, then the

search warrant would be good for perhaps ten days; is that correct?

A: Maximum ten days, yes. [6]

. . . .

Q: And then finally, Officer Silva, the—to your knowledge, the search warrant that you executed on November 26[ ], 2002, did in fact result in a criminal case being brought against [Akau]?

A: Yes.

Q: The undercover officers that were used in this case for—with [Akau], do you recall for what length of time, if any, after the search warrant was executed on November 26[ ], 2002, that they stayed in an undercover capacity, if you will?

A: *One of the undercover officers is still in an undercover capacity, and the second undercover officer I would say, um, maybe approximately six months.* I don't know exactly 'cause there's other divisions and other teams that would use them. So for my case, I would say approximately six months for one, and one is still currently working with us.

Q: In the police reports that were prepared regarding the purchases and sales in this matter with [Akau], their names are disclosed; is that correct?

A: Um, in the criminal cases that—

Q: Yeah, in the police reports.

A: Yes, because I would believe they had to do a—a report on the actual transactions so their name would be signed at the bottom of the report.

Q: Yeah. So it wouldn't be blacked out or something like that; right?

A: No.

(Emphases added.) Ultimately, on June 18, 2004, the circuit court issued its order denying Akau's motion to dismiss. Therein, the circuit court concluded that:

3. [Akau's] assertion that the distribution charges in the instant matter and his possession of an illegal narcotic and drug paraphernalia in [the search warrant case], were "based on the same conduct or arising from the same episode" is unsupported by the evidence presented to the court. HRS [§ ]701–109(2).

. . . .

6. [Akau's] act of *distributing* crystal methamphetamine [ (in the drug buy case) ] and his act of *possessing* an illegal narcotic and drug paraphernalia [ (in the search warrant case) ] do not constitute the "same conduct."

7. The evidence demonstrated that [Akau's] distribution of crystal methamphetamine were discrete acts committed and completed on the specific dates charged in the indictment.

8. Similarly, the evidence demonstrated that [Akau's] possession of the illegal narcotic and related drug paraphernalia were also discrete acts committed and completed on the specific date charged in the complaint and unrelated to the date of the distribution charges in the instant matter.

9. There is no basis to conclude the distribution offenses in the instant matter and the possession and drug paraphernalia offense charged in [the search warrant cases], arose "from the same episode." HRS [§ ]701–109(2). *Accord* [ ] *State v. Carroll*, 63 Haw. 345, 627 P.2d 776 (1981).

10. Accordingly, [Akau] has failed to substantiate his contention that the instant prosecution is barred by operation of "HRS [§§ ]701–111(1)(b) and 701–109(2)."

(Emphases and some brackets in original.) [7]

C. *Motion for Sentencing as a First–Time Drug Offender in the Drug Buy Case*

On April 30, 2004, Akau filed a motion for sentencing as a first-time drug offender, pur-

---

6. HRPP Rule 41(c) (2007) dictates that a search warrant must be executed "within a specified period of time *not to exceed 10 days.*" (Emphasis added.) However, it is unclear from the record what factors the issuing judge examines in determining how long a search warrant will be valid for—*i.e.,* one day or ten days.

7. The circuit court made the following additional FOFs in denying Akau's motion to dismiss:

> 11. [HPD] Officer Shellie Silva testified that the distribution [offenses in the drug buy] case[ ] were not referred immediately to the [p]rosecutor's [o]ffice as to not compromise the identity of the undercover officers who were

suant to HRS § 706–622.5. HRS § 706–622.5 (Supp.2003) sets forth a sentencing scheme that directs the sentencing court, in certain circumstances, to sentence first-time drug offenders to probation and drug treatment rather than imprisonment. At the May 20, 2004 hearing on the motion, Akau essentially argued that it was unfair to sentence him as a first-time drug offender in the search warrant case when the offenses in that action occurred subsequent in time to the offenses for which he was indicted in the drug buy case. He claimed that he did not receive the benefits of the first-time drug offender statute because the search warrant case and the drug buy case were brought separately, as opposed to all offenses being joined in a single prosecution. The prosecution admitted that the situation "[did] look unfair to the defendant," but argued that Akau would not have been eligible for sentencing as a first-time drug offender for the drug buy case even if those charges had been joined with those in the search warrant case because HRS § 706–622.5,[8] by its express terms, is limited only to possession offenses, not distribution offenses. The circuit court denied Akau's motion for sentencing as a first-time offender on June 18, 2004. The circuit court agreed with the prosecution and concluded, *inter alia,* that "HRS [§ ]706–622.5 does not apply in drug distribution cases."

### D. *Akau's Conditional Plea and Sentence*

Prior to the circuit court's issuance of the orders denying Akau's motions to dismiss and for sentencing as a first-time drug offender, Akau entered a conditional guilty plea, pursuant to HRPP Rule 11(a)(2), quoted *supra* note 3, to the charges in the drug buy case. At the hearing on Akau's change of plea, the circuit court stated:

> THE COURT: I'm well aware of this case. This was a search warrant case initially. And then the government chose to use the undercover officers to do the—was it [confidential informants] or [undercover officers]?
>
> [AKAU'S COUNSEL]: [Undercover officers.]
>
> THE COURT: The undercover officers to get sales cases. And there's a squabble, which I totally understand, whether the law allows it. I tried real hard to either settle this case or to figure out a way to cut [Akau] some slack. I'm making a transcript now for the [a]ppellate [c]ourt. I couldn't do it, because I have an oath to follow the law. I can't just, based on the length of my foot or what I had for breakfast, take care of [Akau]. But I think I made a thorough record. So maybe the [a]ppellate [c]ourts might see it differently.

On October 15, 2004, the circuit court accepted Akau's conditional plea, entered its judgment of guilty conviction, and sentenced Akau to a ten-year term of imprisonment with a mandatory minimum of six months, pursuant to HRS § 712–1242(3) (Supp.2003).[9]

---

still involved in ongoing investigations unrelated to the instant matter.

12. There was no evidence that the prosecution delayed in bringing the indictment in the instant matter in order to gain a tactical advantage over [Akau] or to unfairly cause or expose him to stiffer penalties or punishment.

8. HRS § 706–622.5 states in relevant part:

> **Sentencing for first-time drug offenders; expungement.** (1) Notwithstanding any penalty or sentencing provision under part IV of chapter 712, *a person convicted for the first time for any offense under part IV of chapter 712 involving possession or use, **not including to distribute or manufacture** ... of any dangerous drug, detrimental drug,* harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712–1240, or involving possession or use of drug paraphernalia under section 329–43.5, who is nonviol-

ent, as determined by the court after reviewing the:

> (a) Criminal history of the defendant;
> (b) Factual circumstances of the offense for which the defendant is being sentenced; and
> (c) Other information deemed relevant by the court;

shall be sentenced in accordance with subsection (2); provided that the person does not have a conviction for any violent felony for five years immediately preceding the date of the commission of the offense for which the defendant is being sentenced.

> (2) A person eligible under subsection (1) shall be sentenced to probation to undergo and complete a drug treatment program.

(Some emphases in original and some added.)

9. The 2003 version of HRS § 712–1242(3) stated:

> Notwithstanding any law to the contrary, except for first-time offenders sentenced under

On December 8, 2004, Akau filed his notice of appeal.

### E. *Appeal Before the ICA*

On appeal, Akau argued, as he does in his application, that the circuit court erred in (1) denying his motion to dismiss inasmuch as the search warrant case and the distribution case should be considered part of the "same episode" and (2) denying his motion to be sentenced as a first-time drug offender. The ICA issued its SDO on September 21, 2007, discussed more fully *infra,* rejecting Akau's arguments and affirming the circuit court's October 15, 2004 judgment. The ICA filed its judgment on appeal on October 11, 2007. Akau timely filed his application for a writ of certiorari on January 7, 2008. Thereafter, this court accepted Akau's application on February 8, 2008 and heard oral argument on March 6, 2008.

## II. *STANDARDS OF REVIEW*

### A. *Motion to Dismiss an Indictment*

■ "A [circuit] court's ruling on a motion to dismiss an indictment is reviewed for an abuse of discretion." *State v. Mendonca,* 68 Haw. 280, 283, 711 P.2d 731, 734 (1985) (citations omitted).

### B. *Statutory Interpretation*

■ We review the circuit court's interpretation of a statute *de novo. State v. Pacheco,* 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001).

## III. *DISCUSSION*

As previously stated, Akau essentially contends that the ICA erred in affirming the

circuit court's denial of his motions to dismiss and for sentencing as a first-time drug offender. We first address Akau's argument with respect to his motion to dismiss.

### A. *Motion to Dismiss*

■ On application, Akau argues—as he did before the ICA—that the search warrant case and the drug buy case should have been tried together as mandated by HRS §§ 701–111(1)(b) and 701–109(2) because both cases "[arose] from the same episode." As previously quoted, HRS § 701–111 provides in relevant part:

> **When prosecution is barred by former prosecution for a different offense.** Although a prosecution is for a violation of a different statutory provision or is based on different facts, it is barred by a former prosecution under any of the following circumstances:
>
> (1) The former prosecution resulted in an acquittal which has not subsequently been set aside or in a conviction as defined in section 701–110(3)[, quoted supra note 5,] and the subsequent prosecution is for:
>
> . . . .
>
> (b) Any offense for which the defendant should have been tried on the first prosecution under section 701–109 unless the court ordered a separate trial of the offense[.]

(Bold emphasis in original and underscored emphases added.) In turn, HRS § 701–109 provides in relevant part:

> (2) Except as provided in subsection (3) of this section, [10] *a defendant shall not*

section 706–622.5, *if the commission of the offense of promoting a dangerous drug in the second degree under this section involves the possession or distribution of methamphetamine,* or any of its salts, isomers, and salts of isomers, *the person convicted shall be sentenced to an indeterminate term of imprisonment of ten years with a mandatory minimum term of imprisonment, the length of which shall be not less than six months* and not greater than five years, at the discretion of the sentencing court. (Emphases added.)

10.  HRS § 701–109(3) states:
    When a defendant is charged with two or more offenses based on the same conduct or

arising from the same episode, the court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires.

Accordingly, based on HRS § 701–109(3), it appears that, prior to the entry of Akau's plea of no contest in the search warrant case, the prosecution could have sought permission from the circuit court to bring the cases separately. However, neither the circuit court, the ICA, nor the parties address the effect of HRS § 701–109(3) on this case.

*be subject to separate trials for multiple offenses based on the **same conduct or arising from the same episode**,* if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

(Emphases added.) Inasmuch as "it is axiomatic that the 'same criminal episode' element of the compulsory joinder rule is not a self-defining concept[,]" *People v. Miranda,* 754 P.2d 377, 380 (Colo.1988), we first examine this jurisdiction's interpretation of the above statutes and, specifically, the definition of the "same episode" before delving into the correctness of the ICA's conclusions.

### 1. Hawai'i Case Law

#### a. *the Carroll case*

In *State v. Carroll,* 63 Haw. 345, 627 P.2d 776 (1981), the defendant was arrested for allegedly starting a fire at a school. *Id.* at 346, 627 P.2d at 777. The arresting police officer conducted a routine search of the defendant and found a cannister in the defendant's possession. *Id.* Believing that the canister contained nasal spray, the officer returned it to the defendant. *Id.* The defendant was then transported to the police station and booked for attempted criminal property damages in the second degree. *Id.* During a custodial search, a second officer recovered the cannister and identified it as mace. *Id.* The defendant was subsequently charged with possession of an obnoxious substance. *Id.* The defendant was first tried and acquitted of the misdemeanor charge of possession of an obnoxious substance—the mace. *Id.* at 346-47, 627 P.2d at 777-78. The defendant was subsequently brought to trial on the attempted criminal property damage charge. *Id.* at 347, 627 P.2d at 778. The defendant moved to dismiss the indictment, arguing that (1) the two offenses were part of a single "episode within the context of HRS § 701-109(2)" and, (2) inasmuch as the offenses were part of the same episode and not prosecuted in the same proceeding, the second case was prohibited by HRS § 701-111(1)(b). *Id.* (internal quotation marks omitted). The trial court granted the defendant's motion to dismiss the indictment, and

the prosecution appealed. *Id.* On appeal, this court observed that:

> [HRS] § 701-109(2) ... reflects a policy that a defendant should not have to face the expense and uncertainties of multiple trials based on essentially the same conduct or episode. It is designed to prevent the [prosecution] from harassing a defendant with successive prosecutions where the [prosecution] is dissatisfied with the punishment previously ordered or where the [prosecution] has previously failed to convict the defendant.

*Id.* at 351, 627 P.2d at 780 (citations omitted). This court held that the preconditions for the application of HRS § 701-109(2) had been satisfied inasmuch as (1) it was "uncontested that the appropriate prosecuting officer was aware of the ... [a]ttempted [c]riminal [p]roperty [d]amage charge at the time that the possessory charge was prosecuted" and (2) "both charges [were] clearly within the jurisdiction of a single court." *Id.* at 349, 627 P.2d at 779 (footnote and citations omitted). Additionally, this court declared that, "[i]n view of the dual considerations of fairness to the defendant and society's interest in efficient law enforcement," the "test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." *Id.* at 351, 627 P.2d at 780. Applying the test to the facts presented, this court held that the two cases did not arise from the "same episode" because:

> [the] defendant was charged with the commission of offenses which occurred at different times and places and under different circumstances. Our rationale is based primarily on the fact that the arresting officer failed to recognize the illegal nature of the cannister at the time of the search for weapons. As a result, defendant's possession of the [m]ace continued after his initial arrest, until the subsequent discovery and identification at the police station.

*Id.* at 352, 627 P.2d at 781. This court further reasoned that:

While it is true that the possessory offense can be traced to the time of the first arrest, we cannot say that the possessory charge should be deemed effective as of the time of that arrest. The point in time at which the [m]ace was identified is important because prior to the identification, *the facts and circumstances within the first arresting officer's knowledge did not afford probable cause to believe that an offense other than [a]ttempted [c]riminal [p]roperty [d]amage in the [s]econd degree had been committed.*

*Id.* (emphasis added) (citations omitted). Accordingly, the *Carroll* court reversed the trial court's order granting the defendant's motion to dismiss. *Id.* at 353, 627 P.2d at 781.

b. *the Servantes case*

This court, in *State v. Servantes*, 72 Haw. 35, 804 P.2d 1347 (1991), had an opportunity to apply the test announced by the *Carroll* court. In *Servantes*, a police officer observed a passenger in the defendant's car smoking a marijuana cigarette. *Id.* at 36, 804 P.2d at 1348. After ordering the passenger out of the car, the police officers discovered a bag of marijuana in plain view on the driver's side of the car next to the defendant's foot. *Id.* The bag was seized, and the defendant and the passenger were arrested for promoting a detrimental drug in the third degree, a misdemeanor. *Id.* at 36–37, 804 P.2d at 1348. The defendant's car was towed to the police station; four days later, after obtaining a search warrant, the police discovered and seized cocaine and drug paraphernalia from the vehicle. *Id.* at 37, 804 P.2d at 1348. The defendant was arrested and charged with promoting a dangerous drug in the third degree and possession with intent to use drug paraphernalia, both class C felonies. *Id.* The defendant entered a nolo contendere plea to the misdemeanor charge and was sentenced. *Id.* Subsequently, the defendant moved to dismiss the felony indictment on the grounds that HRS §§ 701–111(1)(b) and 701–109(2) barred the prosecution from proceeding on the felony charges. *Id.* The circuit court denied the defendant's motion to dismiss, finding that "the marijuana offense occurred at a different time, place and circumstances from the felony offenses." *Id.*

This court, in reversing the trial court's ruling, stated that:

In *Carroll*, we reasoned that defendant's possession of the [m]ace continued until the discovery and identification at the police station. *Prior to identifying the [m]ace, the facts and circumstances known to the first officer did not afford probable cause to believe that an offense other than attempted criminal property damage had been committed.*

Here, [the defendant] lost possession of both the marijuana and cocaine when he was arrested and his car seized. *Most importantly, police had probable cause at the time of [the defendant's] arrest on the marijuana offense to suspect [the defendant] of possession of additional illegal drugs.*

Furthermore, we cannot ignore that [the defendant's] motion, filed previous to trial, to suppress the evidence seized from his car is obviously part of the trial proceedings. In the course of the suppression hearing, *the [prosecution] would have to refer to a factual account of the misdemeanor offense in order to support probable cause for the search.* A fortiori, the felony charge cannot be tried without mention of the misdemeanor offenses.

*Id.* at 39, 804 P.2d at 1349 (emphases added). Accordingly, this court held that "the [prosecution] was barred under [HRS] § 701–109(2) from prosecuting [the defendant] for the felony offense[of possession of cocaine] by his conviction on the misdemeanor marijuana possession charge." *Id.*

c. *the Keliiheleua case*

In *State v. Keliiheleua*, 105 Hawai'i 174, 95 P.3d 605 (2004), this court again applied the *Carroll* test to determine whether two criminal offenses, prosecuted separately, were barred pursuant to HRS §§ 701–111(1)(b) and 701–109(2). In *Keliiheleua*, the defendant's van "drifted across three lanes of freeway and rear-ended a parked car." *Id.* at 176, 95 P.3d at 607. A passenger in the defendant's van and the driver of the parked car were both injured. *Id.* At the time of the accident, the defendant did not have insurance; however, he "obtained

an insurance policy later that same day." *Id.* "After obtaining the policy, he falsely represented the date and time of the accident as occurring subsequent to the initiation of the policy." *Id.* During the police investigation of the accident, the Insurance Fraud Division of the State of Hawai'i Department of Commerce and Consumer Affairs (DCCA) began a separate investigation of the defendant's purported insurance fraud. *Id.* The DCCA investigator testified he had no knowledge regarding the "pending criminal investigation for the negligent injury case." *Id.* As a result of the DCCA investigation, the defendant was charged with insurance fraud and attempted theft in the second degree. *Id.* at 177, 95 P.3d at 608. On December 6, 2001, the defendant pled no contest to the charges of insurance fraud and attempted theft in the second degree and moved for a deferred acceptance of his plea, which was granted. *Id.* Thereafter, on July 17, 2002, as a result of the HPD's investigation, the prosecutor's office formally initiated prosecution against the defendant as a result of the accident itself. *Id.* On September 19, 2002, a grand jury indicted the defendant on the charge of negligent injury in the first degree. *Id.* The defendant then moved to dismiss the negligent injury indictment, arguing that the case was barred pursuant to HRS §§ 701–111(1)(b) and 701–109(2). *Id.* at 178, 95 P.3d at 609. The circuit court denied the defendant's motion. *Id.* Thereafter, the defendant entered a conditional plea of no contest and subsequently appealed. *Id.* On appeal to this court, the defendant argued, *inter alia*, that the negligent injury case should have been dismissed pursuant to HRS §§ 701–111(1)(b) and 701–109(2). *Id.* This court reasoned that: (1) "although the motor vehicle accident and fraudulent insurance claim occurred on the same day, they did not occur

at the same time"; (2) "although the record does not so indicate, the places where [the d]efendant committed the offenses were presumably different"; and (3) the circumstances were not similar because "the facts and issues involved in the charges (namely, the statutory requirements of the alleged offenses) are dissimilar." *Id.* at 181–82, 95 P.3d at 612–13 (footnote omitted). Accordingly, this court held that, "[because the criminal offenses in question are not closely re]lated in time, place and circumstances, they did not arise from the same 'episode,' [and, c]onsequently[,] HRS § [ ]701–109(2) does not apply to this case." *Id.* at 182, 95 P.3d at 613 (footnote omitted). In so holding, this court distinguished the facts in the case at bar from *Servantes,* which was relied upon by the defendant, stating that:

> Here, there *was no reason to suspect that subsequent to causing the motor vehicle accident, [the d]efendant would obtain an insurance policy and then file a fraudulent insurance claim.* Furthermore, unlike the offenses involved in *Servantes,* the negligent injury charge can be tried without mention of the fraud case.

*Id.* (emphasis added).[11]

### 2. Application of the Compulsory Joinder Statute in this Case

On direct appeal before the ICA, the prosecution argued that the circuit court correctly determined "that there was no basis upon which to conclude that the distribution offenses in the [drug buy case] and the search warrant ... case arose 'from the same episode.'" Specifically, the prosecution asserted:

> Here, the circuit court was correct [that] the distribution offenses and the search warrant case did not arise from the same episode or conduct.[12] The drug buys

11. We also note here our agreement with the interpretation of *Keliiheleua* set forth in the concurring opinion. See Concurring Opinion by Acoba, J. (Concurring Op.) at 60, 185 P.3d at 245 n. 2.

12. In so asserting, the prosecution relied on this court's decision in *State v. Lessary,* 75 Haw. 446, 462, 865 P.2d 150, 156 (1994), for the proposition that " '[p]rosecutions are for the same con-

duct if any act of the defendant is alleged to constitute all or part of the conduct elements of the offenses charged in the respective prosecutions." However, the prosecution's reliance on *Lessary* is misplaced. In *Lessary,* this court held that the "same conduct" test applies under the double jeopardy clause of the Hawai'i constitution. 75 Haw. at 458–59, 865 P.2d at 156. This court specifically indicated that it was not applying the "same episode" test articulated in *Carroll* and that the defendant was "confusing the 'same

were conducted at times separate and apart from the execution of the search warrant. There were entirely different witnesses involved in each offense. The offenses were discovered under different circumstances and were not related in time, place and circumstances. The fact that the buys were used as a basis to support the search warrant did not require the offenses be charged together.

*Id.* at 13.

In affirming Akau's conviction, the ICA agreed with the prosecution and rejected Akau's arguments that all of the charged offenses were required to be joined in a single prosecution. Specifically, the ICA explained that:

> Akau's case is similar to [*Servantes*] because the [prosecution's drug buy case] against Akau provided the [prosecution] with probable cause to search his person and personal effects. The [prosecution's] search warrant, in turn, gave rise to the [search warrant case]. However, Akau's case is distinguishable from *Servantes* because the search warrant for Akau was based on three separate buys/sales for crystal methamphetamine from/to him conducted on three separate buys/sales of crystal methamphetamine from/to him conducted on three separate dates (October 8 and 22 and November 21, 2002)—all made before the police department executed its search warrant on Akau and his personal effects on November 26, 2002. The dates and circumstances involved in the [drug buy case] and [the search warrant case] were more disparate than were the dates and circumstances in the two cases involved in *Servantes*. Hence, we do not agree that the [search warrant case] and [the drug buy case] were part of the "same episode" and, as such, should have been consolidated into one trial.

Akau's case is more like [*Keliiheleua* ] in that the criminal offenses were not closely related in time, place, or circumstances.

The Supreme Court of Hawai'i explained in [*Carroll* ] that HRS § 701–109(2) was designed to prevent the State from harassing a defendant with successive prosecutions where the State had failed to convict the defendant or was dissatisfied with the punishment previously ordered. However, the State's conviction of Akau in the [search warrant case] was successful, as Akau was convicted of [p]romoting a [d]angerous [d]rug in the [t]hird [d]egree and [u]nlawful [u]se of [d]rug [p]araphernialia and sentenced to a term of five years of probation and one year of incarceration. There is no evidence in the record on appeal that the [prosecution] attempted to harass Akau by prosecuting the [search warrant case] separately from the [drug buy case].

ICA SDO at 3–4.

Akau, however, contends that the ICA "committed grave error in being too mechanical and rigid in its approach to the facts of this case and interpretation of case law." Specifically, Akau argues that

> [t]his is evidenced in the [ICA's] own language found on page [three] of the [SDO] ... second full paragraph[,] wherein the [ICA] at first state[d] that the present case is similar to *State v. Servantes*, 72 Haw. 35, 804 P.2d 1347 (1991) and then in the same breath distinguishes Akau from *Servantes* by invoking the "... so closely related in time, place and circumstances ..." language from *Carroll* to point out the obvious that the three buys/sales occurred on different dates[ ]—ignoring the commonality of purpose of each buy/sale.

Even though this case might constitute an anomalous situation (referred to [in] the [o]pening [b]rief as the "Akau anomaly"), this court, nevertheless, should be concerned with the administration of justice,

---

conduct' test with the 'same episode' test." *Id.* at 461, 865 P.2d at 157. Here, the prosecution appears to confuse this court's double jeopardy jurisprudence with its compulsory joinder jurisprudence. Moreover, a number of jurisdictions, in looking at the interplay between double jeopardy protections and their compulsory joinder

statutes, have held that, when applicable, "the compulsory joinder rule ... offer[s] greater protection to the accused than does the double jeopardy clause." *Commonwealth v. Bellezza*, 412 Pa.Super. 469, 603 A.2d 1031, 1036 (1992); *see also People v. Miranda*, 754 P.2d 377, 380 (Colo. 1988).

[c]f., State v. Wong, 97 Hawai'i 512, 40 P.3d 914 (2002)[.]

(Ellipses in original.) *Id.*

As previously stated, criminal offenses that are "based on the same conduct or aris[e] from the same episode" must be joined in a single prosecution "if such offenses are known to the appropriate prosecuting officer at the time of commencement of the first trial and are within the jurisdiction of a single court." HRS § 701–109(2). If the prosecution fails to bring such cases together, the subsequent charges are barred. HRS § 701–111(1)(b). Here, the evidence demonstrates (1) that at the time Akau entered his plea of no contest in the search warrant case the appropriate prosecuting officer was aware of the existence of the three undercover drug buys inasmuch as they served as the bases for the search warrant that ultimately led to the charges levied against Akau in the search warrant case and (2) that both cases were within the jurisdiction of a single court—the Circuit Court of the First Circuit. Additionally, the parties do not dispute, and we agree, that the search warrant case and the drug buy case were not based on the same conduct. Accordingly, the relevant inquiry before us narrows to whether both cases "[arose] from the same episode."

In *Carroll,* this court announced that the "test for determining the singleness of a criminal episode should be based on *whether the alleged conduct was so closely related in time, place and circumstances* that a complete account of one charge cannot be related without referring to details of the other charge." 63 Haw. at 351, 627 P.2d at 780 (emphasis added). The "time" and "place" factors of the *Carroll* test are easily determined and straightforward to apply. However, as discussed more fully *infra,* the "circumstances" factor of the test is more difficult to define and apply.

With respect to the "time" factor, the evidence in the instant case indicates that the undercover drug buys occurred on three separate occasions—October 8, 22, and November 21, 2002. The search warrant was executed on November 26, 2002—five days after the last drug buy. Thus, the facts unequivocally establish that the drug buy offenses and the search warrant offenses did not occur on the same day or at exactly the same time. However, in *Servantes,* this court determined that the lapse of several days between the discovery of the first criminal offense and the second offense was not fatal to the defendant's argument that the two criminal offenses "[arose] from the same episode." *Servantes,* 72 Haw. at 37, 804 P.2d at 1348. In our view, the span of five days between the last undercover drug buy and the execution of the search warrant, or even the forty-nine days between the first drug buy and the execution of the search warrant, is not so disparate as to render the drug buy offenses and the search warrant offenses separate episodes. Thus, because the drug buy offenses and the search warrant offenses were closely related in time, we believe the time factor has been met.

■ With respect to the "place" factor, we expressed concern in *Keliiheleua,* that "defining 'place' as broadly as the entire City and County of Honolulu would unduly hamper the administration and application of HRS § 701–109(2)." 105 Hawai'i at 181, 95 P.3d at 612. However, such concern is not present in the case at bar inasmuch as the evidence established that the place where two of the three drug buys occurred and the place where the search warrant was executed were the same or similar—*i.e.,* in an area fronting 825 and 835 Keeaumoku Street. The third drug buy occurred inside the men's restroom of the Daiei store on Kaheka Street. We take judicial notice that the distance between the Daiei store and the place where the search warrant was executed is approximately .25 miles or about three blocks. *See State v. Puaoi,* 78 Hawai'i 185, 191, 891 P.2d 272, 278 (1995) (holding that "geographical facts, such as whether a particular address is within a certain city and county of the state, is a proper matter subject to judicial notice" (internal quotation marks and citations omitted)). Thus, inasmuch as (1) the place where the first two drug buys occurred and where the search warrant was executed was the same or similar and (2) the third drug buy occurred within close proximity of the place where the

search warrant was executed, we likewise believe the "place" factor has also been met.

With respect to the "circumstances" factor of the *Carroll* test, a close reading of our relevant case law reveals that a common thread runs throughout these cases—that is, an examination of whether the facts and circumstances of the first discovered offense provided sufficient probable cause to suspect that the defendant had committed or would commit the second discovered offense. For example, in *Carroll*, this court determined that the two charged offenses—attempted criminal property damage in the second degree and possession of an obnoxious substance (mace)—were not part of the "same episode" because,

> prior to the identification [of the mace], *the facts and circumstances within the first arresting officer's knowledge did not afford probable cause to believe that an offense other than [a]ttempted [c]riminal [p]roperty [d]amage in the [s]econd [d]egree had been committed.*

63 Haw. at 352, 627 P.2d at 781 (emphases added). Likewise, in utilizing a probable cause analysis, this court in *Servantes* determined that the defendant's marijuana possession offenses and cocaine possession offenses "[arose] from the same episode," reasoning that, "[m]ost importantly, [the] police had probable cause at the time of [the defendant's] arrest on the marijuana offense to suspect [the defendant] of possession of additional illegal drugs[, *i.e.,* cocaine]." 72 Haw. at 39, 804 P.2d at 1349. Finally, in *Keliiheleua,* this court held that the negligent injury charge and the charges in the fraud case did not arise from the "same episode" because, *inter alia,* "there was no reason to suspect that[,] subsequent to causing the motor vehicle accident, [the d]efendant would obtain an insurance policy and then file a fraudulent insurance claim." 105 Hawai'i at 182, 95 P.3d at 613. Based on the foregoing, we believe that the relevant case law in this jurisdiction establishes that, when examining the "circumstances" of offenses alleged to be part of the "same episode," this court has focused primarily on whether the facts and circumstances of the first discovered offense provided sufficient probable cause to suspect

that the defendant had committed or would commit the second discovered criminal offense.

In this case, the undisputed facts and the reasonable inferences therefrom establish that: (1) Akau sold drugs to undercover police officers on three separate occasions, each of which was sufficient to charge him with promoting a dangerous drug in the second degree; (2) the three drug buys, however, also provided sufficient probable cause to suspect that Akau would commit additional drug offenses; (3) rather than refer the drug buy evidence to the prosecutors, the police opted to obtain a search warrant based upon the drug buys; (4) the three previous drug buys provided sufficient probable cause for the search warrant; (5) the execution of the search warrant ultimately led to the possession and paraphernalia charges; and (6) the prosecutors were clearly aware of the distribution offenses at the time they made the decision to charge Akau in the search warrant case. Additionally, we observe that the circumstances involved in the three undercover drug buys were also similar to the circumstances involved in the execution of the search warrant inasmuch as all the offenses were drug related, *i.e.,* they involved the sale and/or possession of crystal methamphetamine or crystal methamphetamine paraphernalia. Because the circumstances of the drug buy case and the search warrant case are closely related, we believe the "circumstances" factor has been met.

Accordingly, we hold that the charged offenses in the search warrant case and the drug buy case arose from the "same episode" inasmuch as Akau's conduct was "so closely related in time, place and circumstances that a complete account of one charge [could not have been] related without referring to the details of the other charge." *Carroll,* 63 Haw. at 351, 627 P.2d at 780. The dissent, however, disagrees, contending that "the offenses allegedly committed in the drug buy case and the possession case [were] not so 'closely related in time, place, and circumstances,' that a **substantial factual nexus' exists between the two cases,** *[People v.] Miranda,* 754 P.2d [377,] 381 [ ( Colo.1988) (*en banc* ) ], whereby 'a <u>complete</u> account of

one charge cannot be related without referring to <u>details</u> of the other charge[.]" [13] Dissenting Op. at 66–67, 185 P.3d at 251–252 (bold emphasis added) (underscored emphases provided by dissent) (citations to *Carroll* omitted). The dissent's belief that a "substantial factual nexus" must be present misconstrues the *Carroll* test.

First, under the compulsory joinder statutes, multiple offenses that are closely related in time, place, and circumstances must be known to the prosecuting officer. *See* HRS § 701–109(2) (stating in part that "a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer"). And, second, such knowledge must be known "at the time of **the commencement** of the first trial[.]" *Id.* (emphasis added). In other words, because a defendant shall not be subjected to multiple trials, prosecutors—at the time they review evidence submitted by the police that involve multiple offenses committed by the defendant, or at least by the time of trial (if those offenses were charged in separate cases)—must necessarily consider whether the offenses involve the same conduct or whether the alleged conduct constitutes a single episode.

Third, in deciding the singleness of a criminal episode, the prosecutor must, as indicated by our case law, consider "whether the alleged conduct was so closely related in time, place and circumstances that a com-

plete account of one charge cannot be related without referring to details of the other charge." 63 Haw. at 351, 627 P.2d at 780. In making charging decisions, prosecutors "*shall not institute* or cause to be instituted *criminal charges* when . . . it is obvious that the charges are *not supported by probable cause.*" Hawai'i Rules of Professional Conduct, Rule 3.8(a) (2004) (emphases added).

In the instant case, the prosecutor, in making a determination of the specific charges to be brought against Akau, would necessarily have been required to review the police affidavit in support of the search warrant—that included a factual accounting of the undercover drug buys, *i.e.*, whether there was probable cause to sustain criminal charges. In conducting such review and evaluating probable cause, it is apparent that a complete account of the search warrant offenses could not be made without reference to the details of the undercover drug buys. Consequently, we also hold that all of the offenses brought against Akau should have been joined in a single prosecution.[14]

Finally, our holding today is consistent with and promotes the policies underlying Hawaii's compulsory joinder statutes, HRS §§ 701–111(1)(b) and 701–109(2), *i.e.*, "fairness to the defendant" and "society's interest in efficient law enforcement." *Carroll*, 63 Haw. at 351, 627 P.2d at 780. As stated by this court in *Carroll*:

> Compulsory joinder of offenses which share a proximity in time, place and circumstances would not only protect the de-

13. In *Miranda*, the Colorado Supreme Court applied the test for determining when two cases arose from the same episode in its *own* jurisdiction. *See Miranda*, 754 P.2d at 380–81 (collecting cases and concluding that "[f]or purposes of compulsory joinder, the requirement that offenses arise out of 'the same criminal episode,' must be interpreted to include the condition that the offenses be connected in such a manner that prosecution of the offenses involved substantially interrelated proof"). We, however, are bound by our own precedent, as discussed *supra*. Accordingly, the dissent's disregard of the case law in this jurisdiction in favor of the test enunciated in an out-of-state case to support its position is unavailing.

14. We recognize that, even though multiple offenses are known to the prosecutor during the

charging-decision stage, the compulsory joinder statutes do not mandate that the prosecutor charge all of the offenses in a single complaint or indictment. Indeed, the prosecutor may charge the offenses in separate complaints or indictments; however, HRS § 701–109(2) appears to contemplate that, when the offenses arise from a single episode and are in the jurisdiction of a single court, the prosecuting officer must, at least by "the time of the commencement of the first trial," HRS § 701–109(2), decide to seek either joinder of all offenses (as required by HRS § 701–109(2)) or separate trials (as permitted under HRS § 701–109(3)). Otherwise, once the first trial commences, the prosecution runs the risk of having the subsequent-charged-offenses dismissed or guilty verdicts on those charges overturned.

fendant from successive prosecutions based on the same conduct or episode, but it would also save the defendant and the [prosecution] time and money[.]

*Id.* Likewise, the commentary to HRS § 701–109(2) states that "[t]hese rules reflect a policy that defendants should not have to face the expense and uncertainties of two trials based on essentially the same episode." Commentary to HRS § 701–109. As more aptly stated by the Pennsylvania Supreme Court, where two criminal cases "arise from the same episode" but are not joined, the criminal defendant is forced to "run the gauntlet repeated times and confront the awesome resources of the state." *Commonwealth v. Nolan*, 579 Pa. 300, 855 A.2d 834, 839 (2004) (quoting *Commonwealth v. Hude*, 500 Pa. 482, 458 A.2d 177, 180 (1983)) (internal quotation marks omitted).

Here, Akau was potentially facing "the expense and uncertainties of two [criminal prosecutions] based on essentially the same episode." Commentary to HRS § 701–109. At the time Akau entered his no contest plea and was sentenced in the search warrant case—in February and April 2003, respectively—he was unaware that law enforcement officials, who had knowledge of the drug buy offenses, would be indicting him in the drug buy case. Having such awareness would presumably have had some impact on Akau's trial strategy, including his decision to plead no contest to the charges in the search warrant case. Moreover, we observed in *Carroll* that HRS § 701–109(2) was "designed to prevent the [prosecution] from harassing a defendant with successive prosecutions where the [prosecution] is dissatisfied with the punishment previously ordered or where the [prosecution] has previously failed to convict the defendant." *Carroll*, 63 Haw. at 351, 627 P.2d at 780 (citation omitted). Inasmuch as law enforcement officials had knowledge of the drug buy offenses at the time the search warrant offenses were charged, but, nevertheless, choose to bring two separate cases at different times, Akau was subjected to harassment with successive prosecutions.

Additionally, "society's interest in efficient law enforcement," *Carroll*, 63 Haw. at 351, 627 P.2d at 780, lies in "judicial adminis-tration and economy," *Hude*, 458 A.2d at 180. As such, we believe that, under the circumstances of the case at bar, this policy consideration also weighs in favor of compulsory joinder because the prosecution could have charged all of the offenses together in a single prosecution, which would have saved the judiciary the expenses associated with having to deal with the two cases separately, including the potential of holding two trials. To hold otherwise would "unduly encourage pursuit and surveillance for lengthy periods of time and multiple prosecutions from the eventual arrest," *Morgan v. State*, 220 Ga. App. 198, 469 S.E.2d 340, 343 (1996), a result surely not supported by either the plain language or purpose of HRS §§ 701–111(1)(b) and 701–109(2). Although the prosecution claims that it could not bring all the charges in a single prosecution because one of the undercover officers involved in the drug buys had not yet "surfaced," the prosecution's claim is weakened by Officer Silva's testimony that, even after Akau was indicted in the drug buy case, one of the undercover officers involved in the drug buys had not yet surfaced. In other words, it appears that the "surfacing" of undercover officers does not necessarily affect the prosecution's ability to bring charges based on undercover drug buys. As such, the policies expressed by HRS §§ 701–111(1)(b) and 701–109(2) further compel this court to conclude that the offenses contained in the search warrant case and the offenses contained in the drug buy case should have been joined in a single prosecution.

Based on the foregoing discussion, we hold that the circuit court erred in denying Akau's motion to dismiss based upon the prosecution's failure to join the search warrant offenses and the drug buy offenses in a single prosecution. As such, we also hold that the ICA erred in affirming the circuit court's erroneous denial.

### B. *Akau's Remaining Contention*

Akau additionally argues that the ICA erred in affirming the circuit court's denial of his motion to be sentenced as a first-time drug offender pursuant to HRS § 706–622.5. However, in light of our holding, as discussed

above, we need not examine Akau's remaining contention on application.

## IV. CONCLUSION

Based on the foregoing, we hold that, inasmuch as the offenses associated with the search warrant case and the drug buy case should have been joined in a single prosecution, pursuant to HRS § 701–109(2), the prosecution of the drug buy case was barred by HRS § 701–111(1)(b). Accordingly, we reverse the ICA's October 11, 2007 judgment on appeal and the circuit court's October 15, 2004 judgment of conviction in the drug buy case.

Concurring Opinion by ACOBA, J.

I concur but note the following.

The statute's mandate that "a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial[,]" Hawai'i Revised Statutes (HRS) § 701–109(2) (1993),[1] relates to prosecutorial charging. This court has said:

> The relevant "test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." *[State v.] Servantes*, 72 Haw. [35,] 38–39, 804 P.2d [1347,] 1349 [ (1991) ] (quoting *[State v.] Carroll*, 63 Haw. [345,] 351, 627 P.2d [776,] 780 [ (1981) ]).

*State v. Keliiheleua*, 105 Hawai'i 174, 181, 95 P.3d 605, 612 (2004).

Obviously, application of the test will differ, depending upon the varying circumstances of the cases.[2] Thus, although prob-

1. HRS § 701–109 entitled "Method of prosecution when conduct establishes an element of more than one offense," states in pertinent part as follows:

   (2) Except as provided in subsection (3) of this section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

   (3) When a defendant is charged with two or more offenses based on the same conduct or arising from the same episode, the court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires.

2. Respectfully, in this regard, the dissent is incorrect in its comparison of the instant case to *Keliiheleua*. In *Keliiheleua*, the defendant was involved in an automobile accident on November 18, 2000, for which he was charged with the offense of negligent injury. 105 Hawai'i at 176–77, 95 P.3d at 607–08. The defendant, who did not have an insurance policy at the time of the accident, obtained an insurance policy later that same day of the accident. *Id.* at 176, 95 P.3d at 607. Upon obtaining the policy "he falsely represented the date and time of the accident as occurring subsequent to the initiation of the policy," for which he was subsequently charged with insurance fraud and attempted theft in the second degree. *Id.* at 176–77, 95 P.3d at 607–08.

As related *infra*, the crux of the issue is whether "a complete account of one charge cannot be related without referring to details of the other charge" based on the close relationship "in time, place, and circumstances." *Id.* at 181, 95 P.3d at 612 (internal quotation marks and citations omitted). First, as the dissent notes as to the time factor, " 'although the motor vehicle accident and fraudulent insurance claim occurred on the same day, they did not occur at the same time.' " Dissent at 62, 185 P.3d at 247 (quoting *Keliiheleua*, 105 Hawai'i at 181, 95 P.3d at 612). However, in the instant case, the time factor was satisfied despite the fact that events pertaining to the drug buy case took place five to forty-nine days before the events relating to the search warrant case because the drug buys were the basis for the procurement of the search warrant that resulted in the other drug-related crimes charged in the search warrant case.

Second, the dissent contends that "[t]he evidence tending to prove a prima facie case against [Petitioner/Defendant–Appellant Anthony Kalani Akau] in both criminal cases occurred ... at different places (835 Keeaumoku Street for the possession case, and, for the drug buy case, the area fronting 825 Keeaumoku Street and a men's restroom of a commercial establishment)[.]" Dissent at 67, 185 P.3d at 252. Although the activities relating to the drug buy case and the search warrant case did not all take place at the exact same physical location, as the majority notes, all of the activities took place within "approximately .25 miles or about three blocks" of each other. Majority opinion at 56, 185 P.3d at 241. Such a limited distance is hardly equivalent to the contrasting "entire City

able cause may be a factor in the single episode evaluation of a specific case, *see* majority opinion at 57, 185 P.3d at 242 (stating that "a common thread runs throughout these cases—that is, ... whether the facts and circumstances of the *first discovered* offense provided sufficient *probable cause* to suspect that the defendant had committed or would commit the second discovered offense[ ]" (emphases added)), I do not believe it is a requirement of the single episode test, or that the order in which the charges are brought is necessarily determinative in applying the test.

There is no probable cause requirement in HRS § 701–109, or that is alluded to in the commentary. Thus the absence of a "probable cause" link between the *first* charge brought and the second charge initiated, is not determinative of the statute's application. Probable cause was not a factor in *State v. Boyd*, 271 Or. 558, 533 P.2d 795 (1975), from which this court obtained the same episode test, *Carroll*, 63 Haw. at 349, 627 P.2d at 779, or in subsequent Oregon cases applying that test. *See, e.g., State v. Smith*, 95 Or.App. 683, 770 P.2d 950, 952 (1989) (two offenses arise from the same criminal episode if "the charges ... arise out of the same act or transaction if they are so closely linked in

time, place, and circumstance that a complete account of one charge cannot be related without relating details of the other charge" (citation and internal quotation mark omitted)); *State v. Grant*, 66 Or.App. 906, 675 P.2d 1120, 1122 (1984) ("In deciding whether multiple charges should be joined, the prosecutor and the trial judge may start ... with the initial guideline that if a complete account of one charge necessarily includes details of the other charge, the charges must be joined to avoid a later double jeopardy defense to further prosecution." (Citation and internal quotation marks omitted.)); *State v. Parrish*, 45 Or.App. 99, 607 P.2d 778, 781 (1980) (two offenses arise out of the same criminal episode if the charges are so factually interrelated that a complete account of one charge cannot be related without relating details of the other).

Moreover, the order in which the cases are filed in court is not fundamentally decisive of the single episode issue. In this case had the "buy" case been brought first and the "search warrant" case second, a complete account of the search warrant case could not be related without relating details of the buy case, thus rendering the search warrant case subject to dismissal as well. Inasmuch as the search warrant case could never be tried,

---

and County of Honolulu" in *Keliiheleua* where the record did not indicate "the places where [the d]efendant committed the offenses[.]" *Keliiheleua*, 105 Hawai'i at 181, 95 P.3d at 612.

Third, the dissent argues that the discovery of the offenses in this case occurred under different circumstances, "namely, the offense in the drug buy case was alleged to have been committed as a result of the three undercover transactions, and the offenses in the possession case were alleged to have been committed as a result of the search of Akau's person," and, thus, "any evidence tending to prove Akau's culpability in the possession case would not constitute a substantial portion of the proof in the drug buy case." Dissent at 67, 185 P.3d at 252 (citation omitted). However, as noted above, the issuance of the search warrant necessary for the search of Akau and leading to the charges of promoting a dangerous drug and unlawful use of drug paraphernalia, was "[b]ased on the [three] undercover [drug buy] transactions[.]" Furthermore, here, "the facts and issues involved in the charges (namely the statutory requirements of the alleged offenses)," *Keliiheleua*, 105 Hawai'i at 182, 95 P.3d at 613, are similar. The offenses of promoting a danger-

ous drug in the third degree under HRS § 712–1243 and unlawful use of drug paraphernalia under HRS § 329–43.5(a) arising from the search warrant case and the offense of promoting a dangerous drug in the second degree under HRS § 712–1242(1)(c) in the drug buy case, contain similar statutory requirements-all involving the possession or distribution of drugs or the possession of drug paraphernalia.

Finally, in *Keliiheleua* the evidence necessary to prove the negligent injury offense was different from the evidence needed to prove the fraud offense. There would be little overlap in the proof adduced for the negligent injury and fraud cases as the two cases would necessitate the production of entirely different witnesses, documents, and testimony. Thus, the purpose of HRS § 701–109(2) to join trials such that defendants will not "have to face the expense and uncertainties of two trials based on essentially the same episode," commentary on HRS § 701–109, and to spare the State the time and expense associated with production of repetitive evidence, would not be served in *Keliiheleua* where there would be little to no overlap in the evidence required for the different charges.

whether brought first or second, without reference to the buy case, both cases must be tried together because of the substantive overlap in evidence from the buy case into the search warrant case. This comports with the purpose of HRS § 701–109(2) and (3) "that defendants should not normally have to face the expense and uncertainties of two trials based on essentially the same episode." Commentary on HRS § 701–109.

Although HRS § 701–109(2) focuses on the knowledge of "the appropriate prosecuting officer at the time of the *commencement of the first trial,*" (emphasis added), it may be impractical at that point in time to add a new charge to the trial without engendering substantial court delay and potential prejudice to the defendant. The offenses pertaining to the drug buy case occurred between October 8, 2002 and November 21, 2002. The offenses pertaining to the search warrant case occurred on November 26, 2002. Thus, in this case, it appears that all the offenses in question were known to the prosecutor at the time the first charge was made via complaint on December 5, 2002. The same episode test was, by definition, applicable to the instant cases at the time of the first charge. Prudentially for the prosecution, then, the crucial question is whether, in considering the evidence known at the time of the first charging decision, a complete account of one charge cannot be related without referring to details of the other charge such that evidence to be presented in one case would substantively overlap evidence in the other case. *See supra* note 2. Finally, if post-charge circumstances indicate that the offenses should not be tried together, then that contingency is met by rendering the cases "subject to the court's power, in [HRS § 701–109] subsection (3), to order severance, if 'justice so requires[,]'" Commentary on HRS § 701–109, as raised by motion of the prosecution or of the defense.

## Dissenting Opinion by NAKAYAMA, J.

I respectfully dissent. In my view, the facts of the distribution offenses in the drug buy case and the facts of the possession case do not arise from the same episode.

The plain language of Hawai'i Revised Statutes (HRS) § 701–109(2) (1993) clearly requires that

a defendant shall not be subject to separate trials for multiple offenses based on the *same conduct* or arising from the *same episode, if such offenses are known to the appropriate prosecuting officer at the time of commencement of the first trial and are within the jurisdiction of a single court.*

(Emphases added.) I agree with the majority's framework for analysis, insofar as the plain language of HRS § 701–109(2) mandates analysis of the following: (1) the condition of prosecutorial knowledge "at the time of commencement of the first trial" and whether the offenses "are within the jurisdiction of a single court[,]" *see* majority opinion at 56, 185 P.3d at 241; (2) whether the separate prosecutions are based on the "same conduct," *see* majority opinion at 56, 185 P.3d at 241; and (3) whether they arise from the "same episode," *see* majority opinion at 56–58, 185 P.3d at 241–243. As stated by the majority, the time, place, and circumstances test enunciated by this court in *State v. Carroll,* 63 Haw. 345, 351, 627 P.2d 776, 780 (1981) provides the framework through which we resolve the issue of whether separate prosecutions arise from the "same episode."

However, the majority's analysis of the "time" factor is inconsistent with this court's unanimous decision in *State v. Keliiheleua,* 105 Hawai'i 174, 181, 95 P.3d 605, 612 (2004). *Compare* Majority opinion at 56, 185 P.3d at 241 (holding that "the time factor has been met" even though the facts leading up to the drug buy case occurred between five and forty-nine days prior to the facts of the possession case), *with Keliiheleua,* 105 Hawai'i at 181, 95 P.3d at 612 (holding that the "time" factor was not satisfied because "although the motor vehicle accident and fraudulent insurance claim occurred on the same day, they did not occur at the same time"). Moreover, while this court in *Carroll,* 63 Haw. at 352, 627 P.2d at 781 stated that "prior to the identification, the facts and circumstances within the first arresting officer's knowledge did not afford probable cause to believe that an offense other than

"[a]ttempted [c]riminal [p]roperty [d]amage in the [s]econd [d]egree had been committed," I do not believe that a finding of probable cause was intended by this court to swallow whole the "circumstances" factor of the *Carroll* test, *see* majority opinion at 56–58, 185 P.3d at 241–243. *Compare Keliiheleua,* 105 Hawai'i at 182, 95 P.3d at 613 ("[T]he circumstances of the cases were not similar[,]" inasmuch as "the facts and issues involved in the charges (namely, the statutory requirements of the alleged offenses) are dissimilar.").

Instead, "whether several criminal acts arise from the 'same criminal episode' for purpose of the compulsory joinder rule depends in the final analysis upon a close examination of the underlying facts on which the several offenses are based." *People v. Miranda,* 754 P.2d 377, 380 (Colo.1988) (citations omitted). "[O]ffenses based on acts or a series of acts 'arising from the same criminal episode' include 'offenses arising either from the same conduct of the defendant or offenses connected in such a manner that prosecution of the offenses will involve substantially interrelated proof.'" *Id.* (citation omitted). Accordingly, "[i]f proof of one of the crimes charged is not relevant to proof of the other, then the two crimes do not involve interrelated proof and as a matter of law are not part of the 'same criminal episode'...." *Id.* at 381 (citation omitted). As the reasoning goes:

> Basing the application of the compulsory joinder statute on a determination of the interrelationship between the proofs of the several offenses properly focuses the trial court's inquiry on the degree to which the defendant is harassed and judicial resources wasted by successive prosecutions.... Where the proof or defense of one charge necessarily involves the proof or defense of another charge, sequential prosecutions of the two charges burden both the defendant and the state with repetitive presentation of evidence. However, where the proofs of the charges are not interrelated, the prejudice to the defendant caused by separate prosecutions is minimal. For purposes of compulsory joinder, the requirement that offenses arise out of "the same criminal episode," must be interpreted to include the condition that the offenses be connected in such a manner that prosecution of the offenses involve substantially interrelated proof. Crimes that are committed simultaneously or in close sequence, crimes that occur in the same or closely related place, and acts that form part of the schematic whole, generally involve interrelated proof.

*Id.* at 380–81; *see State v. Boyd,* 271 Or. 558, 533 P.2d 795, 800 (1975) ("Unless the prosecutor is absolutely certain that presenting the facts underlying each charge will not necessitate reference to the facts underlying another, the prosecutor should move for joinder of the charges for trial.").

In *Keliiheleua,* 105 Hawai'i at 181–82 & n. 9, 95 P.3d at 612–13 & n. 9, this court engaged in an analysis of the time, place, and circumstances test, and noted similarly to *Miranda* that "[e]xamples of crimes arising from the same criminal episode include 'the simultaneous robbery of seven individuals, the killing of several people with successive shots from a gun, the successive burning of three pieces of property, or such contemporaneous and related crimes as burglary and larceny, or kidnaping and robbery.'" (Some quotation marks omitted.) Indeed, in *Keliiheleua,* we held that the criminal offenses were not closely related in time, place and circumstances because (1) "the facts and issues involved in the charges (namely, the statutory requirements of the alleged offenses) [were] dissimilar[,]" (2) "the motor vehicle accident and fraudulent insurance claim occurred on the same day, [but] did not occur at the same time[,]" and (3) "defining 'place' as broadly as the entire City and County of Honolulu would unduly hamper the administration and application of HRS § 701–109(2)." 105 Hawai'i at 181–82, 95 P.3d at 612–13. Although the majority in this case frames its analysis similarly to that of *Keliiheleua, see* majority opinion at 56–58, 185 P.3d at 241–243, the majority, respectfully, fails to make a crucial distinction.

As it relates to the instant case, a distinction must be made between multiple prosecutions that share common characteristics on

the one hand, and, on the other hand, multiple prosecutions that are so interrelated that proof of a single prosecution would constitute a substantial portion of the proof of other prosecutions. *See Miranda*, 754 P.2d at 381 ("While the charges in both prosecutions have some common characteristics-the nature of the offenses, the persons involved in the incidents, the circumstances surrounding the distribution of the cocaine-we cannot say with fair assurance that the charges in each prosecution are so interrelated that proof of the charges alleged in one prosecution would constitute a substantial portion of the proof in the other."). Where this interrelationship exists, both crimes share a "substantial factual nexus" with each other, and, "as a matter of law," must be considered part of the same criminal episode. *Id.*

It is this emphasis on the interrelatedness of proof between separate prosecutions that I believe was intended by this court to compel joinder when we held, in *Carroll*, that "the test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a *complete* account of one charge cannot be related without referring to *details* of the other charge." 63 Haw. at 351, 627 P.2d at 780 (emphases added). This court derived the time, place, and circumstances test from the Supreme Court of Oregon, *see Carroll*, 63 Haw. at 349, 627 P.2d at 779, which stated as follows: "We construe this test of interrelated events as necessitating joinder *only where the facts of [e]ach charge can be explained adequately only by drawing upon the facts of the other charge.* Stated differently, the charge must be cross-related." *Boyd*, 533 P.2d at 799 (footnote omitted) (emphasis added).

This court's jurisprudence reveals a similarity with the foregoing framework. In *State v. Servantes*, 72 Haw. 35, 36, 804 P.2d 1347, 1348 (1991), the arresting police officers "discovered in plain view a clear plastic bag of marijuana on the driver's side of the car next to [the defendant's] foot." Subsequently, the bag was seized and the defendant was placed under arrest for committing the offense of promoting a detrimental drug in the

third degree. *Id.* Apparently, the defendant's car was towed to the police station on the same day and secured. *Id.* It was not until four days later, on January 23, 1989, that the police obtained a search warrant for the car and seized, *inter alia*, cocaine from the car. *Id.* In connection with what was seized on January 23, 1989, the defendant was charged with promoting a dangerous drug in the third degree and possession with intent to use drug paraphernalia. *Id.* This court held that HRS § 701–109(2) applied in *Servantes* because both sets of charges arose from the same episode. *Id.* at 38–39, 804 P.2d at 1349. My interpretation of this court's holding, however, is that pursuant to the time, place, and circumstances test, *see id.*, the evidence to support both prosecutions was obtained at the same time (the car was towed to the police station and secured at the same time the defendant was arrested and charged in connection with the plain view search of the same car), at the same place (the defendant's car), and seized under similar circumstances (the facts surrounding the plain view search of the car, and the facts related to the search of the same car conducted pursuant to a search warrant). *See id.* at 36–39, 804 P.2d at 1348–49. Therefore, *Servantes* presents the situation where there exists a "substantial factual nexus" between both sets of charges, *see Miranda*, 754 P.2d at 381, such that "the facts of [e]ach charge can be explained adequately only by drawing upon the facts of the other charge[,]" *Boyd*, 533 P.2d at 799. *Compare Carroll*, 63 Haw. at 351, 627 P.2d at 780 ("[T]he test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge."), *and Miranda*, 754 P.2d at 381 ("If proof of one of the crimes charged is not relevant to proof of the other, then the two crimes do not involve interrelated proof and as a matter of law are not part of the 'same criminal episode'. . . .").

Contrasting the facts of *Servantes* to *Carroll*, in *Carroll*, the defendant was arrested on October 19, 1978, for starting a fire at a school. 63 Haw. at 346, 627 P.2d at 777. In connection with what purportedly occurred at

the school on that day, the defendant was charged with the offense of attempted criminal property damage in the second degree. *Id.* at 347, 627 P.2d at 778. After being brought to the police station and booked for the above offense, a police officer confiscated a cannister from the defendant's person, which was identified as mace. *Id.* at 346, 627 P.2d at 777. As a result of this identification, the defendant was charged with possession of an obnoxious substance. *Id.* Ultimately, this court held that the offenses occurred at different times and places, and "were discovered under different circumstances...." *Id.* at 352, 627 P.2d at 781. Although this court's "rationale [was] based primarily on the fact that the arresting officer failed to recognize the illegal nature of the cannister at the time of the" initial search, *id.,* it can be inferred from the facts that both offenses did not "share a substantial factual nexus"—the offenses occurred at different times on the same day, *compare Keliiheleua,* 105 Hawai'i at 181, 95 P.3d at 612 (holding that the "time" factor was not satisfied because "although the motor vehicle accident and fraudulent insurance claim occurred on the same day, they did not occur at the same time"), in different places (at a school and at the police station), and under different circumstances (the facts surrounding the defendant's purported intent to commit a criminal act on the one hand, and the facts of the search of the defendant's person by the police, on the other hand). *See Miranda,* 754 P.2d at 381. Accordingly, the facts surrounding the possession case were unnecessary and likely irrelevant to explain adequately the facts of the attempted criminal property damage case. *See Boyd,* 533 P.2d at 799 ("We construe this test of interrelated events as necessitating joinder only where the facts of [e]ach charge can be explained adequately only by drawing upon the facts of the other charge."); *see also Miranda,* 754 P.2d at 381 ("If proof of one of the crimes charged is not relevant to proof of the other, then the two crimes do not involve interrelated proof and as a matter of law are not part of the 'same criminal episode'....").

Likewise, in *Keliiheleua,* the defendant was involved in an automobile accident on November 18, 2000, and injured several people. 105 Hawai'i at 176, 95 P.3d at 607. In connection with this accident, the defendant was charged with committing the offense of negligent injury. *Id.* Meanwhile, in July or August of 2001, an investigation ensued which resulted in charges against the defendant for committing the offenses of insurance fraud and attempted theft in the first degree. *Id.* at 176–77, 95 P.3d at 607–08. As stated above, this court ultimately held that "the criminal offenses in question are not closely related in time, place and circumstances[ ]" because: (1) "the facts and issues involved in the charges (namely, the statutory requirements of the alleged offenses) [were] dissimilar[,]" (2) "the motor vehicle accident and fraudulent insurance claim occurred on the same day, [but] did not occur at the same time[,]" and (3) "defining 'place' as broadly as the entire City and County of Honolulu would unduly hamper the administration and application of HRS § 701–109(2)." 105 Hawai'i at 181–82, 95 P.3d at 612–13. As such, the criminal offenses "did not arise from the same 'episode[,]' " and HRS § 701–109(2) did not apply to that case. *Id.* at 182, 95 P.3d at 613.

In the instant case, the search warrant was executed on November 26, 2002, at 835 Keeaumoku Street, whereupon 0.351 grams of crystal methamphetamine were found on Akau's possession. In connection with the drugs that were recovered on that specific date and place, Akau was charged with promoting a dangerous drug in the third degree, in violation of HRS § 712–1243 (1993),[1] and unlawful use of drug paraphernalia, in violation of HRS § 329–43.5(a) (1993).[2]

---

1.  HRS § 712–1243 mandates that: "(1) A person commits the offense of promoting a dangerous drug in the third degree if the person knowingly possesses any dangerous drug in any amount. (2) Promoting a dangerous drug in the third degree is a class C felony."

2.  HRS § 329–43.5(a) mandates that

It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chap-

On October 21, 2003, Akau was indicted for three counts of promoting a dangerous drug in the second degree, in violation of HRS § 712–1242(1)(c) (1993 & Supp.2003).[3] The indictment was based on the undercover drug transactions that took place on October 8, 22, and November 21, 2002. The October 8, 2002 undercover transaction took place in an area fronting 825 Keeaumoku Street, where an undercover police officer purchased 0.121 grams of crystal methamphetamine from Akau for twenty dollars. The October 22, 2002 undercover transaction took place in the same area by a different police officer who purchased 0.094 grams of crystal methamphetamine from Akau for twenty dollars.

Finally, the November 21, 2002 undercover transaction took place inside a men's restroom of Daiei at 801 Kaheka Street, where the undercover police officer involved in the October 22 transaction bought 0.158 grams of crystal methamphetamine from Akau for twenty dollars.

Contrary to the majority's conclusion, the offenses allegedly committed in the drug buy case and the possession case are not "so closely related in time, place, and circumstances," *Carroll,* 63 Haw. at 351, 627 P.2d at 780, that a "substantial factual nexus" exists between the two cases, *Miranda,* 754 P.2d at 381,[4] whereby "a complete account of one

---

ter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

3. HRS § 712–1242(1)(c) mandates that "[a] person commits the offense of promoting a dangerous drug in the second degree if the person knowingly: ... (c) Distributes any dangerous drug in any amount, except for methamphetamine."

4. Respectfully, the majority misconstrues the concept of a "substantial factual nexus." Contrary to the majority's interpretation, the concept of a "substantial factual nexus" and the reasoning behind it merely serves to guide and clarify application of the "circumstances" factor of the *Carroll* test itself, similar in purpose to the majority's reliance on a finding of probable cause. *See* Majority opinion at 56–58 & n. 13, 185 P.3d at 241–243 & n. 13. However, the majority overlooks that *Keliiheleua* neither required nor applied a probable cause analysis to satisfy the "circumstances" factor, or any other factor, of the *Carroll* test. *See Keliiheleua,* 105 Hawai'i at 181–82, 95 P.3d at 612–13.

To reiterate the reasons for my dissent: (1) the majority's analysis of the "time" factor is clearly inconsistent with *Keliiheleua,* and (2) I do not believe that a finding of probable cause was intended by this court to swallow whole the "circumstances" factor of the *Carroll* test. Instead, the more germane consideration is whether "the *facts and issues* involved in the charges will be similar." *Keliiheleua,* 105 Hawai'i at 182, 95 P.3d at 613 (quoting *Carroll,* 63 Haw. at 350, 627 P.2d at 780) (emphasis added and quotation marks omitted); *accord Miranda,* 754 P.2d at 380 ("[W]hether several criminal acts arise from the 'same criminal episode' for purpose of the compulsory joinder rule depends in the final analysis upon a *close examination of the underlying facts on which the several offenses are based.*"

(Emphasis added.)). Stated another way, the appropriate inquiry is whether there exists a "substantial factual nexus" between both sets of charges, *see Miranda,* 754 P.2d at 381, such that "the facts of [e]ach charge can be explained adequately only by drawing upon the facts of the other charge[,]" *Boyd,* 533 P.2d at 799. *Compare Carroll,* 63 Haw. at 351, 627 P.2d at 780 ("[T]he test for determining the singleness of a criminal episode should be based on whether the alleged conduct was so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge."), *and Miranda,* 754 P.2d at 381 ("If proof of one of the crimes charged is not relevant to proof of the other, then the two crimes do not involve interrelated proof and as a matter of law are not part of the 'same criminal episode'....").

As stated *infra,* although not binding upon this court, it is important that we recognize that the *Carroll* test was derived from Oregon case law. *See Carroll,* 63 Haw. at 349, 627 P.2d at 779. Because the majority concedes that "the 'circumstances' factor of the [*Carroll*] test is more difficult to define and apply[]" given our current jurisprudence, majority opinion at 56, 185 P.3d at 241, Oregon case law is very persuasive in its explanation of the factors of this test. *See Boyd,* 533 P.2d at 799 ("We construe this test of interrelated events as necessitating joinder only where the facts of [e]ach charge can be explained adequately only by drawing upon the facts of the other charge."); *State v. Fitzgerald,* 267 Or. 266, 516 P.2d 1280, 1284 (1973) ("The unauthorized use of the vehicle took place at least 15 miles away and 16 1/2 hours after the escape was completed so that the two transactions were clearly not closely linked in time, place and circumstance. *The evidence of the unauthorized use of the vehicle did not tend in any way to prove the escape.*" (Emphasis added.)). At least one other state has applied the time, place, and circumstances test in a very similar, if not the same, manner as Oregon. *See generally Miranda,* 754 P.2d 377. Accordingly, I also find *Miranda's*

charge cannot be related without referring to details of the other charge[,]" *Carroll,* 63 Haw. at 351, 627 P.2d at 780 (emphases added). Specifically, the facts surrounding the search of Akau's person on November 26, 2002, at 835 Keeaumoku Street, is not relevant to proving Akau's culpability beyond a reasonable doubt for the offense allegedly committed under HRS § 712–1242(1)(c). *See* HRS § 702–205 (1993) ("The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as: (a) Are specified by the definition of the offense, and (b) negative a defense...."); *Miranda,* 754 P.2d at 381 ("If proof of one of the crimes charged is not relevant to proof of the other, then the two crimes do not involve interrelated proof and as a matter of law are not part of the 'same criminal episode'...."); Hawaiʻi Rules of Evidence ("HRE") Rule 401 (1993) (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). The evidence tending to prove a prima facie case against Akau in both criminal cases occurred at different times (November 26, 2002, and October 8, 22, and November 21, 2002), *compare Keliiheleua,* 105 Hawaiʻi at 181, 95 P.3d at 612 (holding that the "time" factor was not satisfied because "although the motor vehicle accident and fraudulent insurance claim occurred on the same day, they did not occur at the same time"), at different places (835 Keeaumoku Street for the possession case, and, for the drug buy case, the area fronting 825 Keeaumoku Street and a men's restroom of a commercial establishment), and "the offenses ...

were discovered under different circumstances," *Carroll,* 63 Haw. at 352, 627 P.2d at 781; namely, the offense in the drug buy case was alleged to have been committed as a result of the three undercover transactions, and the offenses in the possession case were alleged to have been committed as a result of the search of Akau's person by police officers on November 26, 2002, at 835 Keeaumoku Street. As such, any evidence tending to prove Akau's culpability in the possession case would not constitute a substantial portion of the proof in the drug buy case. *See Miranda,* 754 P.2d at 381. Because the two cases do not share a "substantial factual nexus" with each other, *see id.,* the cases are *not* "so closely related in time, place and circumstances that a complete account of one charge cannot be related without referring to details of the other charge." *See Carroll,* 63 Haw. at 351, 627 P.2d at 780; *see also Miranda,* 754 P.2d at 381; *Boyd,* 533 P.2d at 799; *Fitzgerald,* 516 P.2d at 1284.

Accordingly, and in light of the foregoing analysis, I would hold that HRS § 701–109(2) does not apply to this case because the drug buy case does not arise from the "same episode" as the possession case. As such, I would affirm the ICA's October 11, 2007 judgment, which affirms the first circuit court's October 15, 2004 judgment.

---

explanation of the test very persuasive in this case.